I. Jay Green and Beatrice F. Green, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 77980.    Filed February 16, 1961.

*Charles W. Slicer, Esq.*, for the petitioners.
*Gerald W. Fuller, Esq.*, for the respondent.

766

MURDOCK, *Judge:* The petitioners in their brief state that the Commissioner relies upon the facts that Jay had a Dayton telephone, a Dayton telephone listing, a Dayton telephone-answering service, and a Dayton address for answering mail. They apparently fail to realize that the burden is upon them to prove that Jay's home for tax purposes was in Greenville rather than in Dayton. The Commissioner has denied the deductions claimed by the petitioners for travel expense upon the theory that Jay's home for tax purposes was in Dayton. That determination is presumed to be correct and the burden to prove that it was erroneous is upon the petitioners. The telephone and mail receiving addresses are merely some evidence unfavorable to the petitioners, of which there is considerably more.

Not only is the Commissioner's determination presumed to be correct, but the great preponderance of the evidence supports that determination. Most of the facts have been stipulated and Jay was the only witness. The parties have stipulated that Jay had no income from any client in Greenville during the taxable years, and there is no evidence to show that he ever was employed or had any income from business in Greenville. The evidence shows, furthermore, that all of his income for the taxable years was derived from services in Dayton. We cannot assume, in the absence of proof, that these years were not typical of his business activities. The only employment that he ever had as a consultant, so far as this record shows, was in Dayton, an industrial city much larger than Greenville.

The fact that Jay had an office in his residence in Greenville is far from being determinative. He could as well have had it in Dayton. Jay testified that he "Made out reports for clients, the recommendations of work proposed, or to be done, or done for clients, procedures, designed the forms, generator plant layouts, and the general paperwork involved in professional engineering" in Greenville, but he did not relate that statement to any work done during the taxable years. However, with respect to realigning machinery for Lau-Blower in

1954, he testified, "Now, the plant layout and the majority of all the paper work was not done in Dayton. The leg work, the time studies, were done at the plant, as is normal; but the other work was all taken back to my office in Greenville." The parties have stipulated that Jay remained overnight in Greenville at undisclosed times for not more than 50 nights in 1954 and was in Dayton for 300 nights. This, taken in connection with other evidence, leads the Court to doubt that he could have done very much, if any, of his work during the taxable years at his place in Greenville. But even if he did do some work there, certainly by far the largest part of the work which he did to earn income during these taxable years was done in Dayton, and all of it could have been done there without travel expense had he resided there. He may have worked only 1 month in 1955 yet was in Dayton 300 days.

Jay testified in explanation of the Dayton addresses which he used in his business, "Well, through analysis of our ethical way of contacting clients, I found that I got very few responses to Greenville, but that by having an answering service and a mail service where mail could reach me in a city like Dayton, I got a very much greater response, and contacts for my profession." At another place he said he did it "for a prestige standpoint."

The evidence as a whole implies that Jay's only prospects of employment were in Dayton and that he, like his wife, chose to live in Greenville for personal reasons only, while earning income in Dayton. Their work in Dayton does not give rise to business expenses under the circumstances shown in this record, even though Jay depended upon short-period employment. If the record does not prove affirmatively that Dayton was Jay's home for tax purposes, nevertheless, the petitioners have failed to sustain their burden of proof that it was not.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

FISHER, *J.*, dissenting: In this, as in many cases, the purpose of the law is a valuable aid to interpretation. The broad purpose of Congress in enacting section 162(a)(2) of the Code of 1954 was to implement, in a practical way, its recognition of the fact that when the exigencies of business call for travel away from home, such travel usually entails expenses such as hotel bills, extra cost of meals, and transportation expenses not required at home. Leaving aside, for the moment, the question of whether or not the taxpayer traveled "away from home," the stipulated facts show payments for hotel room and meals, together with at least some transportation expense. The relationship of these expenses to his business activities is apparent from the record. The taxpayer has thus brought himself within the practical application of

the law at least to the point of demonstrating actual payment of expenses.

To my mind, the only real question in this case is whether taxpayer was "away from home." That the word "home" is a vague concept for tax purposes is recognized by the Supreme Court in *Commissioner* v. *Flowers*, 326 U.S. 465, in which the Court said, in part (p. 471):

The meaning of the word "home" in § 23(a) (1) (A) with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation. * * *

(For authorities and rulings relating thereto, see notes 4 and 5 and cases cited by the Court in *Flowers*, on pages 471–472.)

It is stipulated that taxpayer resided in Greenville during the years in question. The testimony establishes that in the years in question he had an office in Greenville, and the majority, in its findings, describes the contents and uses thereof. That he went to Dayton in pursuit of his business in 1954 and 1955 is clear upon the record. The incurring of hotel expenses in a Dayton hotel when his residence was in Greenville lends some color to the view that he was not in an "at home" status at that time.

These circumstances, to my mind, make out a prima facie case on the issues in controversy and meet any technical burden of proving that taxpayer traveled "away from home" in pursuit of his business.

I agree that this Court is not bound to accept a prima facie case as conclusive. We may find other supervening circumstances which require a contrary conclusion even though (as here) there is no conflicting evidence.

What, then, are these supervening circumstances, if any?

Petitioner had arrangements with a telephone- and mail-answering service in Dayton. These are facts to be considered, but to my mind are of little significance, particularly when he had no office in Dayton and did not receive or confer with clients at the answering service office. I see no greater significance to the several addresses on his stationery and returns.

Working at the plants could not, of itself, change his home to Dayton. If a taxpayer's home automatically follows a temporary jobsite, no working man could ever be away from home while he was working. In the instant case, it seems clear to me that he went to Dayton and remained there temporarily in pursuit of his own business to carry out short-term, impermanent assignments.

Without going into details, I think it is clear that the use of the hotel was required by the exigencies of his business. It was obviously not his home. (Actually, if petitioner had raised the point, I think he would be entitled to deduct part of the hotel expense as rent under section 162(a) (3), whether in travel status or not, in view of its use for conferences as described in the findings of the majority.)

That the sources of his business activities in the 2 years in issue were in the Dayton area is a factor to be considered, but is not, in my opinion, controlling on the issue of whether or not Dayton was his tax home. The sources in prior or subsequent years could have been Dayton or elsewhere, but the question of his tax home would still necessarily be determined by a consideration of all of the then relevant circumstances.

Finally, there is the argument that petitioner *could* have moved to Dayton. This, of course, he could have done. I cannot agree, however, that Congress intended, or that the law as written requires, a taxpayer, in relation to temporary jobs of the nature here involved, to face the alternative of moving his home every time his job moved or paying travel expenses such as hotel bills without receiving the allowance of a deduction therefor.

On the broader aspect of the case, therefore, I think the views of the majority are wrong in that they defeat the intent of Congress. From the narrower standpoint, in my opinion, the conclusion reached by the majority cannot be justified on the theory of a failure to meet the burden of proof.

BRUCE, WITHEY, and FORRESTER, *JJ.*, agree with this dissent.