Jack B. Thurman v. Commissioner.
Thurman v. Commissioner
Docket No. 803-68.
United States Tax Court
T.C. Memo 1970-114; 1970 Tax Ct. Memo LEXIS 245; 29 T.C.M. (CCH) 506; T.C.M. (RIA) 70114; May 14, 1970, Filed Melvin M. Engel, Home National Gas Bldg., Houston, Tex. for the petitioner. W. Reed Smith, for the respondent. SCOTT Memorandum Findings of Fact and Opinion. SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1965 in the amount of $2,558.83. The issue for decision is whether petitioner is entitled to deduct certain expenses, *246 including living expenses at different locations at which he was employed during 1965 as traveling expenses while away from home in the pursuit of a trade or business. Findings of Fact Some of the facts have been stipulated and are found accordingly. Jack B. Thurman (hereinafter referred to as petitioner) was unmarried during the year 1965. At the time of the filing of the petition in this case he was in Houston, Texas. He filed his individual income tax return for that calendar year with the district director of internal revenue at Austin, Texas. In 1965 petitioner was an unlicensed, nongraduate structural engineer. He worked in this capacity from 1965 until August 1966. During the year 1965 and for some time prior thereto petitioner's name was listed with a number of personnel brokers, each of whom had a copy of his personal resume. Personnel brokers of the type with which petitioner was listed were engaged in locating highly skilled employees for business firms throughout the United States. They would enter into contracts with individuals skilled in various fields. They held themselves out as a source of supply for highly skilled employees. The brokers would assign the workers *247 with whom they had contracted to various employers seeking a certain type of employee. A company seeking specific workers would pay a fee to the broker, who in turn would pay the worker at the hourly wage which they had contracted to pay him. The worker never received remuneration directly from the company for which he was performing services. Any of the personnel brokers with whom petitioner was listed could contact him at any time in regard to an employment contract which they might have available. Sometime prior to January 1, 1965, one of the brokers with whom petitioner's name was listed, Allstates Design & Development Co., Inc. (hereinafter referred to as Allstates) of Trenton, New Jersey, contacted petitioner in Houston, Texas, with respect to employment beginning January 1, 1965, with Monsanto Chemical Company in St. Louis, Missouri. Petitioner entered into two separate contracts with the broker to work in St. Louis on a soft calcium loading facility and a storage facility. This work terminated on approximately March 27, 1965. Near the completion of petitioner's work under his two contracts with Allstates, he was contacted in St. Louis, Missouri, by another broker, Nationwide *248 Consultants, Inc. (hereinafter referred to as Nationwide) 507 of Cleveland, Ohio, with respect to work designing three concrete silos for H.K. Ferguson Company, Cleveland, Ohio. The silos were to be located at the plant of Medusa Concrete Co. in Michigan. Petitioner entered into a contract with Nationwide to perform this work and on March 22, 1965, he began the work which was all done at the offices of the H.K. Ferguson Company in Cleveland. Petitioner completed this work about May 9, 1965. While petitioner was working in Cleveland he was contacted by another broker, Centerline, Inc. (hereinafter referred to as Centerline) of Cleveland, Ohio, with respect to work for the Dravo Corporation in Pittsburgh, Pennsylvania. Petitioner entered into a contract with Centerline to work on an addition to a pelletizing plant for Dravo Corporation in Peru, Pennsylvania. This work was to be completed in the middle of December 1965. The actual completion date of this work was December 15, 1965. In the employment agreement between petitioner and Centerline with respect to the work for Dravo Corporation petitioner listed under "Permanent Address" the address of his parent's home in Houston, *249 Texas. Petitioner received a per diem allowance from Nationwide of $1.40 per hour, not to exceed $56 per week while he was working at the offices of the H.K. Ferguson Company in Cleveland. He received a per diem allowance of $11.20 per day, not to exceed $56 per week from Centerline while he was doing work for Dravo Corporation. The total amount of per diem payment received by petitioner during 1965 was $2,615.20. Petitioner rented and lived in furnished apartments while in St. Louis working at the Monsanto Chemical Co. and while in Cleveland working at the H.K. Ferguson Company offices. Petitioner originally rented a furnished apartment in Pittsburgh but because of the much greater amount of rental costs of an apartment that was furnished as compared to unfurnished, he changed to a rental on an unfurnished basis and purchased furniture for the apartment. Upon completion of his work in Pittsburgh, petitioner brought the furniture back to Houston and stored it at his parent's home. When petitioner obtained work from a broker he knew approximately the length of time that work would last. Even though he knew his work in both St. Louis and Cleveland would be only approximately for *250 two months each he rented furnished apartments instead of hotel rooms because he considered it more economical. During the first few days of 1965 petitioner was physically in Houston and thereafter he did not return to Houston until approximately December 20, 1965, after completing his contract with Centerline for work for Dravo Corporation. His total physical presence in Houston for the year 1965 was approximately 2 weeks. At the beginning of 1966 while in Houston petitioner entered into a contract with a broker for work for the Norton Company in Worcester, Massachusetts. Sometime in July or August 1966, petitioner and Jerry Wiseman incorporated the Thurman-Wiseman Corporation, a Texas engineering company located in Houston. Petitioner and Wiseman leased an apartment together. They lived in the apartment and also used it as an office for the corporation. Petitioner was born and reared in Houston. He has been a registered voter in the state of Texas since 1942. During the year 1965 his automobile was registered in the state of Texas. In 1948 petitioner purchased a home located at 7028 McHenry, Houston, Texas. The house was financed by a "GI" loan. In 1951 petitioner and his *251 former wife were divorced and petitioner deeded the house to his exwife pursuant to a property settlement agreement The mortgage remained on the house and petitioner's former wife made the mortgage payments. In 1955 she sold the house to petitioner's parents and title was taken in their names. Titles remained in their names from that time through the year 1965 and they lived in the house. The house was never refinanced and petitioner remained liable on the initial "GI" loan. In 1965 petitioner was not the title holder of a home or residence in Houston or Harris County, Texas. Petitioner did not pay rent on an apartment for himself in Houston during that year. Petitioner was not providing support or shelter for a former wife or children in Houston during 1965. Petitioner's parents maintained one of the three bedrooms in the house in which they lived for petitioner's use during 1965. His bedroom furniture was in the room as well as some of his clothing. When petitioner left for St. Louis he did not take any of his summer clothing with him, expecting to return to Houston before summer and get the clothing he had left in his parent's house. When he did not return 508 before summer *252 he purchased some summer clothing and did not obtain that which he had left in his parent's house. Petitioner in 1965 owned furniture in addition to the bedroom suit which was in his room in his parent's house. This furniture was stored at his parent's house, some of it in the garage. This furniture consisted of a Chamber gas range, a refrigerator, a dinette set and a high-fi set. Petitioner's hobby was model railroads and model airplanes and this hobby equipment was also stored at his parent's house during 1965. Sometime after 1965 when the dinette set and stove which petitioner's parents were using needed replacing, petitioner's dinette set and stove were taken from storage and used by his parents. The telephone located in the residence at 7028 McHenry was listed in the name of petitioner's parents. Petitioner never directly paid any monthly bill of that listing. Petitioner's parents were both retired during 1965 and petitioner made contributions to their support. In 1965 petitioner made two lump sum payments toward his parent's support, one in the amount of $1,500 which was utilized primarily by petitioner's mother for medical expenses and one other in the amount of $500 which *253 was used in part to pay real property taxes on other property owned by petitioner's parents and in part for their living expenses. Petitioner made other smaller payments toward the support of his parents during 1965 but these payments were not regular as to amount or time. The total of the irregular smaller payments was approximately $600 making a total of approximately $2,600 which petitioner paid towards his parent's support in 1965. When petitioner was physically present in Houston he made no additional contribution of money or food to his parents or toward the household expenses. Petitioner on his 1965 income tax return claimed deductions for traveling expenses of $4,357.62 computed as follows: Expense
Amount
Railroad, airplane, boat, etc. fare
$ 157.60
Meals and lodging
4,944.81
Automobiles
751.50
Trailer rental
113.40
Auditing
20.00
Laundry and cleaning
260.00
Utilities
69.75
Telephone 655.76
Total expenses
$6,972.82
Less: Amount of employer's payment 2,615.20
Excess expense
$4,357.62
Respondent in his notice of deficiency increased petitioner's reported income by the amount of the reimbursed expenses and disallowed the deduction *254 claimed for traveling expenses with the explanation that petitioner had not established that his claimed traveling expenses were incurred while away from home in pursuit of a trade or business as required by section 162 of the Internal Revenue Code of 1954. [1]
Ultimate Finding of Fact Petitioner did not maintain an actual residence in Houston, Texas, during 1965 and Houston was not his home during 1965 within the meaning of section 162(a)(2) of the Code. Opinion Under the decision of the Supreme Court in Commissioner v. Flowers, 326 U.S. 465 (1946) in order for an expenditure to be deductible as a traveling expense under section 162(a)(2)[2] it must be shown that the expenditure is a reasonable and necessary traveling expense, that the expense is incurred "while away from home," and that it is incurred in pursuit of a trade or business. *255 In the instant case there is no issue as to the reasonableness of the expenditures by petitioner or as to the necessity of petitioner's living in the places where his skills were needed in the pursuit of his business or trade as a structural engineer. The issue between the parties is whether the expenses which petitioner seeks to deduct were incurred by him "while away from home." Where a taxpayer has a recognized principal place of employment in one location but maintains his personal residence in another, we have consistently held his "home" within the meaning of section 162(a)(2) to be at the location of his principal place of employment. Mort L. Bixler, 509 5*B.T.A. 1181 (1927); I. Jay Green, 35 T.C. 764 (1961) affirmed per curiam 298 F. 2d 890 (C.A. 6, 1962); Leo M. Verner, 39 T.C. 749 (1963); and Ronald D. Kroll, 49 T.C. 557 (1968). In some cases we have held that a construction worker was "away from home" within the meaning of the statute when he was temporarily employed at a location not within commuting distance of the area in which he maintained his actual residence, where the temporary assignment had been made to *256 him by the local union of the area in which he maintained his residence. Harry F. Schurer, 3 T.C. 544 (1944). See also E. G. Leach, 12 T.C. 20 (1949). Respondent in his Revenue Ruling 60-189, 1960-1 C.B. page 60, which petitioner contends supports his position herein, adopted the holding of such cases as Harry F. Schurer, supra.In a very recent case we held the "home" of a construction worker who received his referrals for temporary work at three separate locations in one year from a local union in Washington, D.C. to be the location of the actual residence in which he, except when away working, and his family lived in Williamsport, Maryland, some 80 miles from Washington. Hollie T. Dean, 54 T.C. No. - 62 (1970). The taxpayer in the Dean case maintained the home in Williamsport for himself and his family and he spent all his weekends and any other time when unemployed there. In no case which has come to our attention has this Court or any other court held a taxpayer who had neither an actual residence which he maintained or a permanent post of duty in a particular location to have a "home" in that location within the meaning of *257 section 162(a)(2). See Irving M. Sapson, 49 T.C. 636 (1968), for a discussion of numerous cases involving whether under varying factual situations a taxpayer maintained an "actual residence" or had a principal "post of duty." In a number of cases taxpayers who had no principal post of duty have been held not to be "away from home" at a place where they were temporarily working either on the basis that they had no "tax home" or their "tax home" was wherever they were at the moment working. Charles E. Duncan, 17 B.T.A. 1088 (1929) affirmed per curiam 47 F. 2d 1082 (C.A. 2, 1931); Kenneth H. Hicks 47 T.C. 71 (1966); Scotten v. Commissioner, 391 F. 2d 274 (C.A. 5, 1968) aff'g a memorandum opinion of this Court; James v. United States, 308 F. 2d 204 (C.A. 9, 1962) and United States v. Mathews, 332 F. 2d 91 (C.A. 9, 1964). Petitioner in the instant case has connections with a number of brokers and insofar as the record shows none of these brokers is located in the Houston, Texas, area. Petitioner does not seek employment in Houston in preference to other locations. The record is clear that during *258 1965, petitioner's principal place of employment was not in the Houston area. Each of petitioner's contracts for work in 1965 was for a short specified period of time and petitioner knew when he accepted the work the approximate time required for its completion. Therefore under our holdings in the cases heretofore cited, petitioner can be considered to have his home in Houston within the meaning of section 162(a)(2) only if he actually maintained a residence in Houston during 1965. In addition to cases hereto cited see Fisher v. Commissioner 230 F. 2d 79 (C.A. 7, 1956) aff'g 23 T.C. 218 (1954). During 1965 petitioner spent a total of only two weeks in Houston and for those two weeks he stayed at the home of his parents. He left Houston the first part of January and returned about the 20th of December. He accepted employment with a Massachusetts company shortly after the first of January 1966. Petitioner testified that in other years he was in Houston more of the time than he was in 1965 but the record is silent as to how long or how frequent these stays were. Petitioner had some furniture stored at his parents' house and some that they were apparently *259 using. However, throughout the record it is clear that the hosue in Houston which petitioner contended was his home was in fact the home of his parents. The most that petitioner showed with respect to this house was that his parents kept one of the three bedrooms in the house as "his room" with his furniture and some of his clothes in it. There is no showing that petitioner's parents did not make free use of the room for their own purposes when petitioner was not using it. It is certainly not uncommon for parents to keep a room available for use of their son on his visits home. That is all this record shows to have been done. Petitioner testified that he gave his parents who were retired approximately $2,600 in 1965. On this basis petitioner contends that he bore the financial burden of the 510 upkeep of "his home" in Houston. The record shows that petitioner gave a lump sum of $1,500 to his mother for her medical expenses, and gave a lump sum of $500 to his parents primarily for payment of real property taxes on property other than the residence owned by petitioner's parents. The remaining amount given by petitioner to his parents at various times but without regularity was *260 stated to be "for their living expenses." The record shows that the money given by petitioner to his parents was given out of concern for his parents needs and well being and not as upkeep on a home of petitioner's in Houston or rent of a room in the home of petitioner's parents in Houston. On the basis of this record we conclude that Houston was not petitioner's home in 1965 within the meaning of section 162(a)(2). Petitioner received per diem allowances from two of the brokers for whom he worked in 1965. The total per diem of $2,615.20 received by petitioner during 1965 was paid to petitioner as a living allowance and therefore was additional compensation under section 61(a)(2). Cockrell v. Commissioner, 321 F. 2d 504 (C.A. 8, 1963) aff'g 38 T.C. 470 (1962). We do not understand petitioner to contend to the contrary but rather understand his contention to be that since if included in income the amount of the per diem allowance would be deductible under section 162(a)(2) for expenses of travel while "away from home" while in the pursuit of business or trade it was unnecessary to first report the amount and then deduct it. Since we hold that petitioner *261 is not entitled to the deductions which he claimed for traveling expenses under section 162(a)(2), it follows that the amounts paid to him as per diem are includable in his taxable income. [3]
Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 162(a)(2). TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and↩
3. From the list of expenses which the taxpayer deducted it superficially appears that some of the items might be deductible for reasons other than being traveling expenses. However, petitioner has made no such contention and has offered no evidence as to the nature of the items listed as deductible as traveling expenses so as to enable us to form any opinion in this respect.↩