**Lee E. DALY and Rosemarie H. Daly, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 79–1523.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 13, 1980.

Decided Oct. 9, 1980.

Charles W. Schoeneman, Washington, D.C., for appellants.

James F. Miller, Tax Division, Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Grant W. Wiprud, Tax Division, Dept. of Justice, Washington, D.C., on brief), for appellee.

Before FIELD, Senior Circuit Judge, HALL and SPROUSE, Circuit Judges.

K. K. HALL, Circuit Judge:

Lee and Rosemarie Daly appeal from a Tax Court decision which disallowed the deduction of certain meal, lodging and travel expenses incurred by Lee Daly during 1975. The Tax Court found that Daly, a salesman, resided and maintained his office in his home in McLean, Virginia, but concentrated the greater share of his income producing activities in the Philadelphia, Pennsylvania area. The court concluded that Philadelphia was Daly's principal place of business and was therefore his "home" as contemplated by Section 162(a)(2) of the Internal Revenue Code.[1] Consequently, the court denied deduction of all expenses incurred by Daly while traveling between Philadelphia and McLean, and while staying overnight in the Philadelphia area. On appeal, we find the Tax Court's decision to be erroneous and reverse.

Daly and his family have resided in McLean, Virginia, since 1960. His wife has been employed by the Georgetown Uniform Company in nearby Washington, D.C., since 1964. In 1965, Daly became a salesman for the Myrtle Desk Company of High Point, North Carolina and was assigned a sales territory consisting of Delaware, New Jersey and eastern Pennsylvania. Although McLean was outside this territory, Daly's employer did not require him to relocate or maintain an office within his territory. To avoid the loss of Mrs. Daly's job and the inconvenience of moving, the Dalys continued to reside in McLean. This arrangement continued through 1975.

Daly's employment required him to solicit orders from approximately 125 furniture dealers plus other customers located in various parts of his sales territory. During 1975, Daly made 126 trips from his residence into his territory, usually staying overnight for two nights on each trip. Daly paid all expenses on these trips and was not reimbursed by his employer. During 1975, 44 percent of Daly's trips (55 out of 126) were to Philadelphia proper or within the surrounding 28-mile area; 66 percent (83 of 126) were to locations within 54 miles of Philadelphia; and 80 percent (101 of 126) were to locations within 88 miles of Philadelphia. In contrast, only 6 percent (7 of 126) were to locations as near as 85 miles from McLean.

Although Daly spent a substantial amount of time in Philadelphia, his selling activities did not require a Philadelphia office. Consequently, Daly did not have any office or base of operations in Philadelphia. Daly prepared his sales reports and other incidental paperwork in the office he maintained at his McLean residence. Further, Daly's business card listed his McLean residence telephone number as his business number.

On his 1975 tax return, Daly deducted $7,161.95 for meals, lodging and travel expenses he incurred on his sales trips. On July 1, 1977, the Commissioner of Internal Revenue issued a notice of deficiency in which he disallowed $7,025.95 of the deductions on the grounds that (1) the disallowed deductions had not been substantiated; (2) the expenses were not ordinary and necessary business expenses; and (3) Philadelphia was Daly's "tax home." The Commissioner later conceded $5,073.00 in disputed deductions, but disallowed $1,952.95 representing the cost of travel from McLean to Philadelphia, and meal and lodging expenses incurred in the Philadelphia area.

\*    \*    \*    \*    \*    \*

1. Section 162(a)(2) provides:

(a) In general.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including–

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business;

These deductions were again denied on the Commissioner's theory that Philadelphia was Daly's tax home.[2]

The Tax Court found that Philadelphia was the center of Daly's income producing activity, based upon the concentration of Daly's sales trips in and around the Philadelphia area. Citing *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), the court found that Daly's reasons for living in McLean were personal rather than business, and that the additional travel and living expenses created by his choice of residence were as unnecessary and inappropriate to the conduct of his employer's business as were his personal and living costs in McLean. The court concluded that Philadelphia was both Daly's principal place of business and "home" for purposes of Section 162(a)(2), and that the deductibility of his meal, lodging and travel expenses must be determined with Philadelphia as the point of departure rather than McLean. Accordingly, the court denied deduction of those expenses attributable to Daly's travel from McLean to Philadelphia and his food and lodging while in the Philadelphia area.

The sole issue presented on appeal is whether Daly had a principal place of business in Philadelphia which constituted his "home" as contemplated by Section 162(a)(2). After consideration of the authorities cited by the parties and the Tax Court, we conclude that Daly did not have a principal place of business or a tax home in Philadelphia because he maintained no office, residence or other means of conducting his business in that geographic area.

The authorities relied upon by the Tax Court and cited by the Commissioner all involve taxpayers who had a residence in one city and an office, place of business or similar facility in another city. For example, *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946) involved a taxpayer who had a definite place of busi-

ness at his employer's office in Mobile, Alabama, but for personal reasons conducted a portion of that business in Jackson, Mississippi where he resided. The Supreme Court found that the taxpayer's expenses for traveling to Mobile and staying there overnight were not deductible because such expenses were essentially the personal costs of commuting from his residence to his employer's place of business. 326 U.S. at 473, 66 S.Ct. at 253. Similarly, *Green v. Commissioner*, 35 T.C. 764 (1961) aff'd 298 F.2d 890 (6th Cir. 1962), involved a self–employed taxpayer who resided and maintained an office in Greenville, Ohio, but also maintained an answering service and mail delivery in Dayton, Ohio. The taxpayer testified that his Dayton answering service and mail delivery were intended to attract business in the Dayton area. Since the substantial portion of the taxpayer's income was derived from the Dayton area, the Tax Court concluded that Dayton was his tax home. 35 T.C. at 767.

The arguments disclosed only one decision which is factually similar to the present case. In *Schreiner v. McCrory*, 186 F.Supp. 819 (D.Neb.1960), the taxpayer was employed as a salesman by an insurance company based in Omaha, Nebraska. The taxpayer also resided in Omaha, and was assigned a sales territory encompassing Nebraska, Kansas, Missouri, Iowa and Colorado.[3] The evidence indicated that the taxpayer spent a greater part of his working time and earned a greater part of his income in Denver, Colorado, but that he had no office or similar place of business there. The Commissioner contended that Denver, not Omaha, was the taxpayer's "home" under Section 162(a)(2). The district court disagreed with the Commissioner and found Omaha to be the taxpayer's home. After distinguishing *Flowers*, the court observed that traveling salesmen were entitled to deduct their proper traveling expenses in-

---

2. The Commissioner concedes that these expenses have been substantiated.

3. *Schreiner* differs from this case in that Schreiner resided within his sales territory whereas Daly does not. Since the Commis-

sioner contended in both cases that the concentration of income producing activity determines the tax home, the distinction between residing in or out of the sales territory is unimportant.

curred in pursuit of their employer's business. The court stated that a contrary holding would impose a penalty upon the salesman which would make it impossible for him to earn a living. In the court's words:

"It would impose upon him the burden of maintaining two homes—one where his family is regularly established, and one where the government chooses to designate it, on the basis of the time spent and the amount of money earned there. I am of the opinion that this was not the intent of Congress in establishing the provisions for traveling expense deductions."

186 F.Supp. at 823.

We agree with the *Schreiner* court that the result reached here was not intended by Congress. We therefore conclude that the concentration of Daly's income producing activity in the Philadelphia area is insufficient, by itself, to create a principal place of business or "home" as contemplated by Section 162(a)(2). In the absence of such a principal place of business or home, Daly is entitled to designate his place of residence in McLean, Virginia, as his home for tax purposes.

Accordingly, the decision of the Tax Court is

*REVERSED.*

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent.

Under the Internal Revenue Code, § 162(a)(2), deductions are permitted for traveling expenses while away from home. They are allowed for expenses necessitated by the pursuit of a trade or business, not for personal, living, or family expenses. Although the line is often difficult to draw, I cannot say that the Tax Court's factual resolution in this instance is clearly erroneous, and I believe it should be affirmed.

The Dalys decided to reside in McLean, Virginia, rather than within Mr. Daly's sales territory, to avoid the inconvenience of moving and so Mrs. Daly would remain close to Washington, D. C., where she was then employed. Although Daly did some paperwork at his residence in McLean, he testified that "selling is 85% of the job." Daly's sales territory consisted of parts of the states of Pennsylvania, Delaware, and New Jersey. The great majority of his sales trips took him to the Philadelphia area. The Tax Court thus concluded that Daly's reasons for residing in McLean instead of within the sales territory were personal, not business, and that the travel expenses engendered by that choice, like those of the traveling lawyer in *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), were " 'as unnecessary and inappropriate to' the conduct of his employer's business as 'were his personal and living costs' in McLean." Absent clear error, this factual resolution should stand. *Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960); *Miller v. Commissioner*, 421 F.2d 1405, 1407 (4th Cir. 1970).

In *Flowers*, 326 U.S. at 470, 66 S.Ct. at 252, the Supreme Court abstracted from section 162(a)(2) three conditions which a taxpayer must satisfy to deduct a traveling expense:

(1) The expense must be reasonable and necessary; and

(2) The expense must be incurred while away from home; and

(3) The expense must be incurred in pursuit of business.

"Failure to satisfy any one of the three conditions destroys the traveling expense deduction." 326 U.S. at 472, 66 S.Ct. at 253.

In the majority's view, the "sole issue" in this case concerns the second condition: whether Daly's principal place of business or tax home was in Philadelphia. The third condition must also be considered: whether, as expressed in *Flowers*, the expense was motivated by the "exigencies of business" rather than the "personal conveniences and necessities" of the taxpayer. 326 U.S. at 474, 66 S.Ct. at 254. It makes no difference here whether we consider the third condition as an independent requirement or as a probative element shedding light on the issue of the location of Daly's tax home.

In *Flowers* the Supreme Court expressly left undecided the meaning of "home." This court, however, has charted the route we must follow here in *Babeaux v. Commissioner*, 601 F.2d 730 (4th Cir. 1979); *Commissioner v. Peurifoy*, 254 F.2d 483 (4th Cir. 1957), *aff'd per curiam*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); and *Barnhill v. Commissioner*, 148 F.2d 913 (4th Cir. 1945). Our decisions leave no doubt that the tax home must be determined by reference to the general locus of the taxpayer's employment.

Judge Soper, in construing section 162(a)(2) in *Barnhill*, observed that "in allowing deductions for traveling expenses to one who is away from home on business, the statute implies that the home and the place of business must be in the same general locality." 148 F.2d at 917. To be sure, we declined to construe "home" as completely synonymous with "place of business." We defined "home" in light of the congressional purpose of allowing a deduction for business trips. We held:

> [I]t is not reasonable to suppose that Congress intended to allow as a business expense those outlays which are not caused by the exigencies of the business but by the action of the taxpayer in having his home, for his own convenience, at a distance from his business. Such expenditures are not essential to the prosecution of the business and were not within the contemplation of Congress which proceeded on the assumption that a business man would live within reasonable proximity to his business.

148 F.2d at 917. Thus, while we did not arbitrarily equate "home" with "place of business," we noted that "in most cases . . . the result will be the same." *Id.*

In *Peurifoy*, we held that the taxpayers, construction workers, were not entitled to deduct their living expenses while employed at a construction site some distance from their homes, or their travel expenses at the termination of their employment. Of course, the construction site in *Peurifoy* constituted a single, fixed place of employment. And a primary concern there, not present here, was whether the employment was temporary. But those considerations do not render what we said in *Peurifoy* entirely inapposite.

> [T]he expense, in order to be deductible, must be "required by the exigencies" of the employer's business, not those of the calling of the employee. "The job, not the taxpayer's pattern of living, must require the travel." . . . That an employee for reasons personal to himself and his family maintains a home at a distance from his business does not serve the business of the employer and ordinarily his travel expense and the expense of his maintenance at either place is not deductible (citations omitted).

254 F.2d at 486. We recently affirmed *Puerifoy*'s vitality in *Babeaux*.

The majority apparently agrees with these principles but holds that Daly did not have a principal place of business in the Philadelphia area. This decision is based solely on the fact that Daly maintained no office or residence in the Philadelphia area. I feel this conclusion is overly broad. The majority's solution would just as well permit Daly to reside in Nassau as in McLean. So long as he maintained no fixed business address within his sales territory in the Northeast, he could deduct the expenses of his travel to and from the Caribbean. I do not believe that Congress intended so to subsidize the personal lifestyle of selected taxpayers. The absence of a single, fixed office or local headquarters, of course, raises a factual question as to the location of the principal place of doing business, but this question cannot be avoided simply because no single business headquarters exists. *See Babeaux v. Commissioner*, 601 F.2d 730 (4th Cir. 1979); *Bunevith v. Commissioner*, 52 T.C. 837, *aff'd*, 25 A.F.T.R. 70–935 (1st Cir. 1970); *Commissioner v. Peurifoy*, 254 F.2d 483 (4th Cir. 1957), *aff'd per curiam*, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958).

In *Bunevith*, the taxpayer's job entailed his traveling to various towns within a work area confined to northeastern Massachusetts. He had no office or fixed locale

within his working area. For personal reasons, unrelated to his job, the taxpayer chose to reside in central Massachusetts outside his work area. The employer's headquarters were in yet another area. The taxpayer claimed a deduction for the added traveling expenses attributable to his living outside the work area. The Court of Appeals for the First Circuit affirmed the Tax Court's conclusion that the travel expenses were not deductible. That his work location could only be defined in terms of a general geographic area did not foreclose the critical inquiry into the reason for the expenditures.

Daly maintains his home far from the primary area of his income–producing activity. This circumstance does not differ from those of the state supreme court justices involved in *Barnhill* or the construction workers in *Puerifoy* and *Babeaux*. It is true that the justices in *Barnhill* were required to maintain offices in the state capital. The taxpayers in *Peurifoy* and *Babeaux* worked at a specific site. A permanent physical facility and a specific work site, however, are not the only indicia of the place where business is conducted. Many interesting and lucrative businesses operate without fixed quarters in the area where their principal income is produced. The "work site" for many is a broad geographical area. Although the majority's approach would avoid this sometimes tedious chore of ascertaining the principal place of business when *no single* headquarters exists, the holding runs counter to the rationale of section 162(a)(2).

The majority suggests that disallowing the deduction here would impose upon the taxpayer the burden of maintaining two homes, one near the center of his income–producing activity, another where his family is established.[1] I agree that Congress did not intend that harsh result, but neither did

it intend to federally subsidize personal choices as to life style. The subjective consideration of the reasonableness of the taxpayer's moving his residence closer to the area of his work plays no role in determining the deductibility of traveling expenses. *Peurifoy,* 254 F.2d at 487. "Business trips are to be identified in relation to business demands .... The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors." *Flowers,* 326 U.S. at 474, 66 S.Ct. at 254.

The facts are undisputed. The Commissioner determined that Daly's decision to live well outside his sales territory was personally motivated and that the interests of his employer were not thereby served. In the Tax Court Daly failed to carry his burden of proving the Commissioner wrong. I would affirm the Tax Court's decision.

---

1. The majority finds support in *Schreiner v. McCrory,* 186 F.Supp. 819 (D.Neb.1960), for its conclusion that the concentration of the taxpayer's income–producing activity does not determine the tax home. Schreiner lived in Omaha, which was part of a large sales territory. Daly's circumstances would only parallel Schreiner's if Daly's residence were in his sales

territory. In dismissing the factual differences between this case and *Schreiner,* the majority writes that "the distinction between residing in or out of the sales territory is unimportant." *Supra* at 353, n. 3. This does not square with the majority's acceptance of the rule that an acknowledged place of business is unquestionably the tax home.