T.C. Memo. 2019-30

UNITED STATES TAX COURT

MICHAEL E. BROWN AND MIRIAM L. MERCADO-BROWN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21096-15.                          Filed April 8, 2019.

PH is an independent contractor carrying on a "concierge CFO business". At times he has had as many as three clients simultaneously. In year 1, he entered into a three-year contract with Co. X and was required to work four days a week in Pennsauken, New Jersey. He returned to his home in Atlanta, Georgia, for the rest of the week. Co. X was the sole source of business income reported by Ps for the period beginning when PH went to work for Co. X and extending through year 2. R disallowed Ps' deductions of PH's traveling expenses between Atlanta and Pennsauken for years 1 and 2.

Held: Ps have failed to prove that Pennsauken was not PH's regular or principal place of business during the time he worked for Co. X.

Held, further, Ps have provided us with no authority that we are to look at PH's business history as a whole to determine whether he had a regular or principal place of business.

**[*2]**       Held, further, Ps have failed to prove that PH's weekly trips from Pennsauken to Atlanta were in the pursuit of a trade or business.

Held, further, I.R.C. sec. 162(a)(2) deductions for traveling expenses denied.

Held, further, accuracy-related penalties sustained.


Frank G. Podesta, for petitioners.

James H. Brunson III, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  Respondent determined deficiencies in petitioners' Federal income tax for their 2012 and 2013 taxable (calendar) years of $3,669 and $17,905, respectively, and accuracy-related penalties for those years of $734 and $3,581, respectively.  We must decide whether petitioners are entitled to deduct for those years (sometimes, examination years) expenses for travel, food, and lodging under section 162(a) and whether they are liable for the accuracy-related penalties.

Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in force for the examination years, and all Rule

**[*3]** references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar. Petitioners bear the burden of proof. See Rule 142(a).[1]

## FINDINGS OF FACT

Petitioners lived in Alpharetta, Georgia, a suburb of Atlanta (without distinction, Atlanta), when they filed the petition. The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and documents stipulated are accepted as authentic.

Mr. Brown's Business

Mr. Brown has an undergraduate degree in accounting from La Salle University. He also has a master's degree in finance. In 1989, he became a certified public accountant. He provides finance-related services to clients and views himself as operating a "concierge CFO [chief financial officer] business". He has had clients for his CFO business since at least 1998. At times, he has had as many as three clients simultaneously. His clients do not necessarily require him to do his work for them on their business premises. If not on the client's business

---

[1]Petitioners have not raised the applicability of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations. We conclude that sec. 7491(a) does not apply here because petitioners have not produced any evidence that they have satisfied the preconditions for its application.

[*4] premises, he may work on the client's matters from home or, if he is on the road, from his hotel room. During the examination years, he made a home with his wife and children in Atlanta.

Tax Returns

Mr. Brown prepared petitioners' 2012 and 2013 Federal income tax returns (Form 1040, U.S. Individual Income Tax Return). Petitioners included with their 2012 Form 1040 three Schedules C, Profit or Loss From Business, each showing Mr. Brown as proprietor of the business and each showing petitioners' home address in Atlanta as the address of the business. The three schedules describe the subject businesses as "Parkmobile USA, Inc." (Parkmobile), "American Furniture Rental, Inc." (AFR), and "Project Next, Inc." (Project Next), respectively.[2] Petitioners also included three Schedules C with their 2013 Form 1040, all, like the 2012 Schedules C, showing Mr. Brown as the proprietor and petitioners' home address as the businesses address. The three schedules were for Michael E. Brown--Consulting, Project Next, and Miriam L. Mercado-Brown. On neither

---

[2]While each of the three Schedules C describes the subject business as being incorporated, the first two are describing the names of Mr. Brown's clients and are not meant to communicate that his Schedule C business was incorporated. The third Schedule C relates to his consulting business, which was not incorporated.

[*5] their 2012 nor 2013 Form 1040 did petitioners claim any deduction for the business use of any portion of their residence.

Parkmobile

Mr. Brown worked for Parkmobile from April 2011 through April 2012. Parkmobile is in Atlanta. On the Parkmobile Schedule C, petitioners reported substantial gross income from Parkmobile and a travel expense of $7, the deduction of which was not disallowed by respondent.

Project Next

Mr. Brown described the nature of Project Next's business as providing services to clients, viz, his "concierge CFO business". Petitioners reported no gross income for Project Next for either 2012 or 2013 although for each year they claimed deductions for various expenses, unchallenged by respondent, but no traveling expense. For 2012, they claimed deductions for advertising, legal and professional services, and office expenses of $748, $138, and $96, respectively, and for 2013 they claimed deductions for legal and professional services and other expenses, principally "Internet address renewal costs", of $138 and $972, respectively.

**[*6]** <u>AFR</u>

Mr. Brown began work for AFR in October 2012. His engagement by AFR was governed by a "Consulting Agreement" (agreement). The agreement provides that his engagement was to commence on October 2, 2012, and continue until October 2, 2015, unless terminated earlier upon, among other happenings, either party's giving five days written notice of termination to the other party. It requires that Mr. Brown provide his services as an independent contractor and not as an employee. It also provides that AFR is to pay Mr. Brown a consulting fee of $12,500 a month for the first year of the three-year period of the agreement and an increased monthly amount during each of the remaining years of the agreement. AFR has offices in numerous locations, including Pennsauken, New Jersey (apparently the company's headquarters), and Atlanta. The agreement provides that AFR would reimburse Mr. Brown for certain of his business expenses, but it specifically excludes reimbursing him for his expenses in traveling to and from Pennsauken. Pursuant to a September 14, 2012, email from AFR's chief executive officer to him, Mr. Brown was required to work a four-day (Monday through Thursday) workweek in Pennsauken. On the 2012 AFR Schedule C, petitioners reported compensation of $37,500 received by Mr. Brown from AFR and claimed a deduction of $10,065 as a business expense for the cost of his weekly travel from

[*7] Atlanta to Pennsauken. Petitioners reported compensation of $159,759 received by Mr. Brown from AFR on the 2013 Schedule C entitled "Michael E. Brown--Consulting" and claimed a deduction of $52,617 as a business expense for the cost of his weekly travel from Atlanta to Pennsauken. Mr. Brown worked for AFR until at least August 4, 2014.

Miriam L. Mercado-Brown

Petitioners reported $25,000 of income and no expenses on the 2013 Miriam L. Mercado-Brown Schedule C. That income was Mr. Brown's income, part of what he received from AFR, and not his wife's income.

Pango USA

Pango USA (Pango) is an Israeli technical company that Mr. Brown testified he worked for from 2012 through 2014. He never visited Pango's U.S. headquarters in Harrisburg, Pennsylvania. He could do Pango's work on his computer, in Atlanta or wherever he was. Petitioners reported no income from Pango on their 2012 or 2013 Form 1040.

Penalties

The accuracy-related penalties that respondent determined were $734 for 2012 and $3,581 for 2013. Those penalties were proposed by one of respondent's tax compliance officers, Janice Moore, who examined petitioners' returns for the

**[*8]** examination years.  The penalties were approved in writing by her immediate supervisor, Supervisory Tax Specialist Jennifer Earls, before respondent issued the statutory notice of deficiency here in issue.

OPINION

I.    Traveling Expenses

A.    Introduction

Section 162 permits taxpayers to deduct all ordinary and necessary business expenses paid or incurred during the taxable year and specifically includes "traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business".  Sec. 162(a)(2).[3]

A taxpayer's "home", for purposes of section 162(a)(2), generally means the vicinity of his principal place of employment rather than his personal residence. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Zbylut v. Commissioner, T.C.

---

[3]Sec. 274(d) generally disallows any deduction under sec. 162 for, among other things, "any traveling expense (including meals and lodging while away from home)", unless the taxpayer complies with stringent substantiation requirements as to the amount, time and place, and business purpose of the expense.  Sec. 274(d)(1).  At trial, in response to the Court's question as to whether there was any substantiation issue, counsel for respondent informed the Court that there was none.  We accept that and consider substantiation to not be an impediment to petitioners' claims that they are entitled to deductions for traveling expenses under sec. 162(a)(2).

**[*9]** Memo. 2008-44, 2008 WL 539018, at *5. Accordingly, expenses incurred in commuting from a taxpayer's personal residence to a taxpayer's business or place of employment are generally nondeductible personal expenses. E.g., Zbylut v. Commissioner, 2008 WL 539018, at *5; sec. 1.262-1(b)(5), Income Tax Regs.

> Where a taxpayer does not have a permanent place of business, but rather is employed temporarily by various employers at different locations, we generally deem the situs of the taxpayer's permanent residence to be his or her tax home, and the taxpayer's traveling expenses from his residence to those temporary places of employment may be deductible. * * *

Zbylut v. Commissioner, 2008 WL 539018, at *5; accord Barrett v. Commissioner, T.C. Memo. 2017-195, at *10. However,

> [w]hen a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the location of the taxpayer's new principal place of business. Determining the principal place of business includes review of the location where the taxpayer spends more of his time, engages in greater business activity, and derives a greater proportion of his income. * * *

Barrett v. Commissioner, at *10 (citations omitted).

### B. Parties' Arguments

#### 1. Petitioners' Argument

Relying principally on Zbylut, petitioners claim that because, during the examination years, Mr. Brown had no principal place of business and worked at

[*10] multiple locations, his tax home was his permanent residence in Atlanta. In support of their claim that he had no principal place of business and worked at multiple locations, they cite his testimony at trial that he worked for three companies during 2012 and 2013, "one exclusively from Atlanta (Park Mobile), another predominately from Atlanta (American Furniture Rental), and a third from wherever he was at the time, which more often than not was Atlanta (Pango USA)." They add: "He also testified that the vast majority of administrative and marketing work was performed from Atlanta." They conclude: "Mr. Brown worked more in Atlanta, Georgia than anywhere else, including * * * [Pennsauken]." Alternatively, relying on Daly v. Commissioner, T.C. Memo. 2013-147, at *10, petitioners argue that, even if Mr. Brown spent a majority of his time in Pennsauken, his tax home would be in Atlanta because he did not have a regular or principal place of business. In Daly v. Commissioner, at *10 (citing section 1.911-2(b), Income Tax Regs.), we said: "If an individual has no regular or principal place of business because of the nature of the business, then the individual's tax home is his or her place of abode in a real and substantial sense."

[*11]     2.     Respondent's Argument

Respondent argues that Mr. Brown's tax home became Pennsauken when he executed the agreement and, therefore, petitioners cannot deduct his expenses of commuting weekly from Atlanta to Pennsauken.

C.     Analysis

1.     Introduction

As we understand it, Mr. Brown is in essence a business consultant who, over the years, has had numerous clients for his concierge CFO business. Often, he has had more than one client at once. Many, if not most, of his clients did not require him to be present on, or, indeed, spend much time at, their business premises. Such is a wonder of the information age. But AFR was different. In October 2012, he began work for AFR pursuant to the agreement, which, unless earlier terminated, would run for three years. Also, AFR required that he work in Pennsauken four days a week. He did not move his family to Pennsauken but traveled between the two cities weekly. We must decide whether petitioners may deduct the expenses of that travel, and that depends on where, during the times he incurred those expenses, his tax home was.

**[*12]**      2.      <u>Mr. Brown's Tax Home</u>

a.      <u>Mr. Brown's Engagement by AFR Was Indefinite</u>.

At trial, Mr. Brown suggested that, because, under the agreement, AFR could terminate his engagement at will, his engagement by it was temporary (implying that, because the engagement was temporary, Pennsauken never became his tax home). And while petitioners do not pursue that argument on brief, the fact that the agreement, although terminable by either party, was to last for three years is indicative that Mr. Brown could not have expected his work for AFR in Pennsauken to be temporary; i.e., he could not have expected it to be concluded within a reasonably short period. <u>See</u> <u>Giesbrecht v. Commissioner</u>, T.C. Memo. 1995-118, 1995 WL 127903, at *4 (finding similar circumstances and concluding that taxpayer's contract employment was indefinite, entitling him to no deduction for traveling expenditures because contract-employment location became tax home).

b.      <u>Mr. Brown Worked Every Week in Atlanta</u>.

Petitioners also argue that Pennsauken never became Mr. Brown's tax home because in 2013 (as in 2012) he did not work the full year in Pennsauken. It is true that Mr. Brown did testify that in mid-2013 he negotiated with AFR's chief executive officer a change in his arrangement that allowed him to work alternate

[*13] two-week periods in Pennsauken and in AFR's Atlanta office. That testimony, however, contradicted his testimony earlier in the case that "[w]hen I first joined American Furniture Rental, Inc. [in October 2012], I was in a hotel room for 17 months[,] every week." And while substantiation is not an issue in this case, see supra note 3, we assume that petitioners have (or at least had) adequate records and receipts documenting Mr. Brown's travel schedule that would support his claim that beginning in the second half of 2013, he worked in Pennsauken and in Atlanta on an alternating two-week schedule. Petitioners' failure to produce evidence in their possession that, if true, would be favorable to them gives rise to the presumption that, if produced, the evidence would be unfavorable. That is especially true where the party failing to produce the evidence has the burden of proof. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), aff'd, 162 F.2d 513 (10th Cir. 1947). Petitioners have failed to convince us that, beginning in mid-2013, Mr. Brown worked alternating two-week periods in Atlanta and in Pennsauken. Accordingly, they have failed to convince us that, in 2013 (vacation time aside), Mr. Brown worked less than four days a week, every week, in Pennsauken.

**[*14]**  c.  <u>From October 2012 Through 2013 Pennsauken was Mr. Brown's Regular or Principal Place of Business</u>.

But Mr. Brown did return to Atlanta weekly. He was an independent contractor and, apparently, not precluded by the agreement from soliciting or working for other clients during his tenure with AFR. He testified that he did marketing for his concierge CFO business using a computer application, and he "[c]ould be anywhere" to do that task. He testified that he did administrative work for his business in Atlanta, but he did not describe that work or say how long he spent at the work. And although he claimed that, during the examination years, he worked for Pango in Atlanta, he did not describe that work or the time he spent at it. As noted, he reported no income from Pango for the examination years.

From October 2012 through 2013, AFR was the sole source of Mr. Brown's business income. He spent the majority of his time (four days a week) in Pennsauken, working for AFR. While he may have engaged in activities with respect to his concierge CFO business while at home on long weekends in Atlanta, he did not describe any client meetings in Atlanta or otherwise describe work assignments or business-related tasks that necessitated his being in Atlanta to accomplish them. Petitioners have not persuaded us that, from October 2012 through 2013, he worked for multiple clients at various locations. We find that,

[*15] during the time he worked for AFR in 2012 and 2013, Pennsauken was his regular or principal place of business. See Barrett v. Commissioner, at *10; see also Green v. Commissioner, 35 T.C. 764 (1961) (holding taxpayers not entitled to a deduction for travel expenses from home in Greenville, Ohio, to Dayton, Ohio, from whence came all of husband's income), aff'd per curiam, 298 F.2d 890 (6th Cir. 1962). But, relying on Daly v. Commissioner, at *10, petitioners do argue that, because Mr. Brown "did not have a regular or principal place of business", his tax home was in Atlanta.

      d.     We Do Not Take a Long-Term View.

Mr. Brown testified that he has had business clients since at least 1998. And if, since then, he has had numerous clients, it may well be true that, considering the intervening 15 years as a whole (1998 through 2013), he has had no regular or principal place of business. But petitioners have provided us with no authority that we are to take such an extended view to determine whether, during the finite period of his business history here under consideration (from October 2012 through 2013), he had no regular or principal place of business. In Green v. Commissioner, 35 T.C. 764, the taxpayer husband was self-employed as an industrial and management consultant. The taxpayers' residence was in Greenville, Ohio, and the husband had an office at the residence, where he did

[*16] some client-related work. The husband had no income from any client in Greenville, and, for the two years in issue, all of his income was from Dayton, Ohio. The Court disallowed his traveling expenses between Greenville and Dayton, saying that the work he did in Greenville could have been done in Dayton and that the taxpayers chose to live in Greenville "for personal reasons". Id. at 767. The Court added: "Their work in Dayton does not give rise to business expenses under the circumstances * * * , even though * * * [taxpayer husband] depended upon short-period employment." Id. Judge Fisher, dissenting, cautioned: "If a taxpayer's home automatically follows a temporary jobsite, no working man could ever be away from home while he was working." Id. at 768 (Fisher, J., dissenting). In affirming per curiam the Court of Appeals said: "The evidence reveals that his business headquarters in Dayton was indefinite and indeterminate. His situation is not within the concept of the allowable deductions for traveling expense." Green v. Commissioner, 298 F.2d at 891. We will follow our report in Green, as affirmed by the Court of Appeals, in concluding that Mr. Brown's tax home became Pennsauken when he went to work for AFR.

**[*17]**        3.        <u>Travel From His Tax Home to His Family Home</u>

However, Mr. Brown was away from his tax home in Pennsauken when, weekly, he traveled to his family home in Atlanta to spend long weekends with his wife and children.  To deduct his traveling expenses from and to his tax home (Pennsauken) under section 162(a)(2), petitioners would have to prove that Mr. Brown traveled to Atlanta "in the pursuit of a trade or business".  Petitioners claimed no deduction for the business use of any portion of their residence.  As stated, Mr. Brown did testify that, while in Atlanta, he worked for Pango and performed administrative activities for his business.  His testimony, however, was vague, and he failed to offer a convincing business reason why he could not accomplish those tasks in Pennsauken.  He failed to explain why, as with his use of his computer for marketing activities, he could not use his computer and "be anywhere" to work for Pango and perform administrative activities.  In a nutshell, petitioners have failed to prove that Mr. Brown's weekly travel from his tax home in Pennsauken to Atlanta was "in the pursuit of a trade or business".  <u>See</u> sec. 162(a)(2); <u>Mazzotta v. Commissioner</u>, 57 T.C. 427, 429 (1971) (holding taxpayer could not deduct travel expenses from his place of major employment to his residence, a place of minor employment, because "[t]he primary motivation for

**[\*18]** \* \* \* [the taxpayer's] trips from his major place of employment to his residence was personal"), aff'd, 467 F.2d 943 (2d Cir. 1972); Karp v. Commissioner, T.C. Memo. 1976-325 ("[E]ven though a taxpayer performs some business of a minor nature at his residence, he may not deduct the expense of travel to this place of business if his travel to the place is principally motivated by a desire to return to his residence, a purely personal motive, and only incidentally by business reasons.").

### 4. Conclusion

Because petitioners have failed to show that Mr. Brown's tax home was in Atlanta from October 2012 through 2013 or that, during the examination years, he traveled from his tax home in Pennsauken to Atlanta in the pursuit of his business, they have failed to show error in respondent's adjustments to their income disallowing their reported traveling expenses for Mr. Brown's weekly travel between Atlanta and Pennsauken. We sustain respondent's adjustments to that effect.

## II. Accuracy-Related Penalties

Section 6662(a) and (b)(1) provides for an accuracy-related penalty of 20% of the portion of an underpayment of tax attributable to "[n]egligence or disregard of rules or regulations." Negligence as used in section 6662(b)(1) is defined as

**[*19]** any failure to make a reasonable attempt to comply with the Internal Revenue Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348 (9th Cir. 1991).

The Commissioner has the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b). Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Once the Commissioner meets this burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 447. The taxpayer may meet this burden by proving that he acted with reasonable cause and in good faith with respect to the underpayment. See sec. 6664(c)(1); see

[*20] also Higbee v. Commissioner, 116 T.C. at 447; sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent satisfied his burden of production with regard to negligence by establishing that petitioners had little if any grounds for claiming Atlanta as Mr. Brown's tax home when they filed their 2012 and 2013 returns. Mr. Brown is a certified public accountant with a master's degree in finance. He took it upon himself to prepare the couple's tax returns. When he prepared those tax returns, he of course knew that the agreement was for three years and that neither return showed income earned after October 2012 from any client other than AFR. His experience and training should have alerted him to the dubiousness of petitioners' reporting position.

Respondent has also satisfied his burden of production with regard to the supervisory approval requirement of section 6751(b). Respondent produced a completed penalty approval form and declaration of his examiner that establish timely supervisory approval.

Petitioners rely on the absence of any deficiencies as their defense to the accuracy-related penalties. Because we have found deficiencies in tax, petitioners'

**[*21]** defense fails. We, therefore, sustain respondent's imposition of the accuracy-related penalties for the examination years.

Decision will be entered for

respondent.