George **MONTGOMERY** and J. W. Montgomery, **Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 75–2118.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1976.

Decided April 7, 1976.

---

Richard A. Young, Gluski, Young & Randall, Dearborn Heights, Mich., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Gilbert Andrews, Gary R. Allen, Carolyn R. Just, Tax Div., Dept. of Justice, Washington, D.C., Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D.C., for respondent-appellee.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

The question presented in this appeal is whether the taxpayer, a member of the Michigan House of Representatives representing a district in the city of Detroit, was "away from home" within the meaning of § 162(a)(2) of the Internal Revenue Code of 1954 while attending legislative sessions in Lansing, Michigan. In an opinion reported at 64 T.C. 175 (1975), the Tax Court held that the taxpayer's "home" for purposes of § 162(a)(2) was Lansing (his principal place of business), rather than the taxpayer's res-

idence in Detroit. Accordingly, he was not "away from home" while attending legislative sessions in Lansing. We affirm.

Reference is made to the decision of the Tax Court for a detailed statement of the facts. For purposes of this appeal the facts are summarized as follows:

The appellants, George and J. W. Montgomery, husband and wife, had their legal address in Detroit, Michigan, for the taxable year 1971. Mr. Montgomery (the taxpayer) was a member of the Michigan House of Representatives (the House) representing a district in the city of Detroit. He was a House majority whip, Chairman of the Committee on Taxation, and a member of the Education and Labor Committees. His sole occupation in 1971 was this legislative position. During 1971, he was serving his eighth two-year term as a representative.

The taxpayer's principal duties as a legislator consisted of attending House sessions and committee meetings. These sessions always were held in Lansing. The committee meetings normally were held there but infrequently were held elsewhere. His duties also required him to meet with various groups of his constituents in Detroit to discuss their views concerning legislation. Such groups included the Detroit Board of Education and the Planned Parenthood Association.

The House began its 1971 session on January 13 and continued through December 30. In 1971, the House was in session for 155 days, of which the taxpayer attended 151 days. During this time the taxpayer retained his residence in Detroit pursuant to Article IV, § 7 of the Michigan constitution, which requires a legislator to be an elector of the district he represents and to remain domiciled there.

Every Monday afternoon while the House was in session, the taxpayer drove 85 miles from his residence in Detroit to Lansing. There, he would attend legislative sessions and committee meetings from Monday evening until Friday afternoon. On Friday evening he would return to Detroit. During the week-ends in Detroit he would meet with various groups of constituents. In 1971, he met with these groups on 75 days.

While in Detroit, the taxpayer resided in a house which he owned. The residence was normally unoccupied when he was away, since Mrs. Montgomery spent a great deal of time in Florida for health reasons and made only occasional visits to Detroit. When in Lansing, he stayed at a hotel and ate at various restaurants. He spent $3,775 for meals, lodging and incidental living expenses in Lansing. The State reimbursed him for $2,695 of these expenses.

The taxpayer claimed business expenses of $3,757 in 1971 for meals and lodging expenses incurred in Lansing. He deducted that amount under § 162, to the extent it exceeded his reimbursements. The Commissioner disallowed the taxpayer's expenses incurred in Lansing, his principal place of business; however, $2,000 was allowed for living expenses incurred in Detroit which was determined to be his minor place of business. The Tax Court upheld the Commissioner's determination.

The taxpayer argues that his choice of residence was not a matter of personal convenience since it was required by the Michigan constitution; therefore, he contends, our prior decisions applying the principal place of business test should not control. We believe, however, the Tax Court was correct in applying the objective test we announced in *Markey v. C.I.R.*, 490 F.2d 1249 (6th Cir. 1974), to determine the taxpayer's tax "home." In *Markey*, we stated the applicable test as follows:

We hold, therefore, that when a taxpayer has two places of business or employment at a considerable distance from one another, his designation of one as his abode, if different from the place where he spends more of his time, engages in greater business activity, and derives a greater proportion of his income, is not dispositive of the question which location is his home for the purpose of deducting traveling expenses. 490 F.2d at 1255.

There is no doubt that a state legislator who in fact is called upon to

perform services, while the legislature is in session, in the area that he represents on behalf of its residents is thereby discharging the duties of his office and carrying on a trade or business as a member of the legislature. *See,* Rev.Rul. 67, 1961–1 Cum. Bull. 25. The *Markey* test, however, must be applied to determine whether the duties performed in that area constitute a minor or principal place of business.[1]

The legislative history behind § 162(a)(2) is contrary to the taxpayer's position that a deduction necessarily must be allowed when a legislator travels from the area he represents to his Capital City. Section 162(a)(2) first appeared in the Code in 1921 as § 214.[2] When § 214 was being considered on the floor of the Senate, Senator Walsh of Massachusetts raised the question of the application of this deduction to Congressmen, attending legislative sessions in Washington, while away from the areas they represent. 61 Cong.Rec. 6672 (1921). The discussion that followed indicates that this proposed construction is not within the purview of the bill. 61 Cong.Rec. 6672–74 (remarks of Senators Watson and Williams).[3] Congressional intent was further expressed in 1952 when Congress enacted specific legislation providing that the place of residence of a member of Congress in his state or district would be considered his "home" for purposes of § 23(a)(1)(A) of the Revenue Code of 1939 (now § 162(a)(2), Int.Rev.Code of 1952). Act of July 9, 1952, ch. 598, § 1, 66 Stat. 464, *amended by* Act of August 1, 1953, ch. 304, 67 Stat. 318, 322 (codified at 26 U.S.C. § 162(a)).

The intent of Congress regarding tax treatment of its own members should likewise be applicable to the state legislators, considering the similarities of their duties. Therefore, the fact that the 1952 legislation was directed only to members of Congress would indicate that Congress has not changed its position regarding state legislators. Although similar proposals have been made to Congress with respect to state legislators, Congress has not enacted specific legislation applicable to them; *e. g.*, Ways and Means Release No. 11 (October 14, 1975).

■  The relief which Legislator Montgomery seeks should be addressed to Congress and not to the courts. It is the prerogative of Congress to allow or disallow deductions for business expenses and to prescribe the conditions under which such deductions may be claimed. In the interpretation of the existing statutes, we are not willing to say, by judicial decree, that members of state legislatures are entitled to a deduction of all their unreimbursed business expenses incurred at the Capital City of their respective States during legislative sessions and committee meetings.

The judgment of the Tax Court is affirmed.

---

1. If application of the *Markey* test results in the State's Capital City being the principal place of business (tax "home"), the Commissioner should allow a deduction for expenses while at his minor place of business. *See,* Rev.Rul. 67, 1961–1 Cum.Bull. 25. This is the procedure the Commissioner followed in the instant case.

2. What is now § 162(a)(2) was brought into the tax structure by § 214 of the Revenue Act of 1921, 42 Stat. 239. Prior to that date, § 214 had permitted the deduction of "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business," Revenue Act of 1918, 40 Stat. 1066 (1918), without the limitation "away from home."

3. The subsequent decision in *Lindsay v. C.I.R.,* 34 B.T.A. 840 (1936), also supports this conclusion. The Board of Tax Appeals, however, based its decision not on the legislative history of the Act of 1921 but on §§ 6 and 7 of the United States Code, Title 4.