WILLIAM A. ROHR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rohr v. Commissioner
Docket No. 7880-79.
United States Tax Court
T.C. Memo 1982-117; 1982 Tax Ct. Memo LEXIS 630; 43 T.C.M. (CCH) 736; T.C.M. (RIA) 82117; March 9, 1982. Jeffrey H. Levi, for the petitioner Elizabeth S. Henn, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 6,302.40 in petitioner's Federal income tax for the year 1977. The only issues remaining for decision are: (1) whether certain expenditures, which were claimed by petitioner as travel expenses incurred while "away from home," are deductible as ordinary and necessary business expenses under section *631 162; [1] (2) whether per diem of $ 1,512 paid to petitioner by his employer in 1977 is includable in his taxable income. FINDINGS OF FACT Some facts have been stipulated and are found accordingly. William A. Rohr (petitioner) resided in Columbia, Maryland, when he filed his petition in this case. He filed a timely Federal income tax return for 1977 showing his home address as 8190 Clarance Center Road, East Amherst, New York. On the return he claimed an employee business expense of $ 16,283, consisting of $ 90 for "airplane, boat, railroad, etc.," $ 11,560 for meals and lodging and $ 4,633 for automobile expenses. Petitioner provided no substantiation of his claimed employee business expenses to respondent when his return was audited. Petitioner is a contract engineer who has a bachelor of science degree in physics. Prior to 1974 the petitioner lived and worked in the Buffalo, New York, area. In 1974 he was divorced from his wife. His children continued to live with his wife in the Buffalo area. In 1974, after his divorce, the petitioner began *632 working as an engineer for Tad Technical Services Corporation (TTSC) whose offices were located in Baltimore and Ellicott City, Maryland. TTSC contracts with various corporations to provide engineering services. Between August 1974 and July 1977 the petitioner was contracted out by TTSC to Westinghouse Corporation in Maryland. He was versatile and highly skilled in many areas of engineering. Consequently, he handled a wide range of different jobs, such as stress, thermal, acoustical, packaging and instrumentation engineering and environmental testing. Petitioner worked for Westinghouse on various engineering projects each ranging in duration from three to nine months. During his three years at Westinghouse petitioner worked in the same plant at Hunt Valley, Maryland. He was provided with a desk at the plant. Although each engineering project varied in nature he did not change desks for each project. During the period between August 1974 and July 1977 when petitioner worked at Westinghouse, he had a written employment contract with TTSC which provided for compensation at a fixed rate per hour. There was no written agreement for each project on which petitioner worked. His *633 employment could have been ended at any time for any reason by either himself or Westinghouse. At the beginning of August 1977 the petitioner began working as an employee of TTSC and was contracted out to TCOM Corporation in Maryland. At the end of 1977 he left the employment of TTSC and formed his own engineering consulting company, Encompass Industries Corp., which did business with TTSC in Maryland from 1977 to 1981. Petitioner worked for TCOM until December 1978, first as an employee of TTSC and then pursuant to a contract between his company and TTSC. Petitioner has lived continuously in Maryland since August 1974. He shared an apartment during 1977 with a woman with whom he had lived for approximately two years. He had a bank account in Maryland. He had a Maryland driver's license. He filed a Maryland income tax return in 1977. He did not file a New York state income tax return for that year. In 1977 the petitioner did not have an apartment or house in the Buffalo, New York, area. During the ten weekends he spent in Buffalo during that year he stayed with his brother. He paid him $ 25 each month in cash. While in Buffalo the petitioner also visited with his *634 children who lived with his former wife. From August 1974 to October 6, 1981 (the date of trial) the petitioner never worked in the Buffalo area. Nor did he seek employment there. While employed with TTSC he did not request an assignment in Buffalo, although TTSC had offices in that area. During the years 1974 through 1977 there was little employment in engineering available in the Buffalo area. A person with petitioner's engineering skills, especially in the aerospace industry, had better job opportunities in the Baltimore-Washington area during that period. Petitioner paid $ 1,940.80 for rental on an apartment in Maryland in 1977. At the trial he offered no receipts for any other expenses incurred in Maryland during 1977, and he maintained no books or records pertaining to his claimed employee business expenses. In his notice of deficiency dated March 8, 1979, respondent disallowed all of the claimed employee business expenses.
Petitioner was paid per diem of $ 1,512 while he worked with TCOM in 1977. The amount of per diem was included on petitioner's W-2 form for 1977 but was not included in box number 2 labeled "Wages, tips and other compensation." Petitioner *635 did not report the per diem income of $ 1,512 on his Federal income tax return for 1977. ULTIMATE FINDINGS OF FACT 1. Petitioner did not maintain a permanent place of abode in the Buffalo area in 1977. 2. Petitioner's employment in Maryland in 1977 was indefinite and not of a temporary nature. 3. Petitioner omitted $ 1,512 from his taxable income in 1977. OPINION Issue 1. Traveling Expenses--Tax Home
We must first decide whether the petitioner is entitled to deduct his expenses for meals and lodging while living in Maryland in 1977 and the expenses he incurred in traveling between Maryland and Buffalo, New York. Its resolution depends upon the location of the petitioner's "tax home" during that year. Section 162 (a) (2) provides that there shall be allowed as a deduction all ordinary and necessary traveling expenses (including amounts expended for meals and lodging) paid or incurred during the taxable year while "away from home" in pursuit of a trade or business. Section 262, on the other hand, provides that, except as otherwise provided by the Code, no deduction shall be allowed for personal, living or family expenses. Generally, a taxpayer's "home" *636 for purposes of section 162 (a) (2) is considered to be located at (1) his regular or principal place of business or (2) if he has no regular or principal place of business, then at his regular place of abode in a real and substantial sense. Crossland v. Commissioner,T.C. Memo. 1974-277, affd. 76-1 USTC P9188 (2d Cir. 1975), 37 AFTR2d 76-651; Rev. Rul. 73-529, 1973-2 C.B. 37. However, where employment is temporary, rather than indefinite, a taxpayer may deduct traveling expenses incurred while he is working away from his permanent abode in such temporary employment. In order for petitioner to establish that he is entitled to a traveling expense deduction he must show that he had a permanent abode which he was away from, and that the employment away from that home was temporary. Petitioner contends that his "tax home" in 1977 was Buffalo and that his employment in Maryland was temporary. To the contrary, respondent contends that the petitioner did not have a permanent home in any real and substantial sense in the Buffalo area in 1977 and that his employment in Maryland was indefinite. We agree with the respondent. The purpose of the *637 deduction is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner,49 T.C. 557, 562 (1968) (emphasis added). Thus, it is the expenses arising from business considerations that fall within section 162 (a) (2). With that in mind, this Court has consistently interpreted "home," as used in section 162 (a) (2), to mean the vicinity of a taxpayer's principal place of business rather than his personal residence. Mitchell v. Commissioner,74 T.C. 578 (1980); Montgomery v. Commissioner,64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976); Coerver v. Commissioner,36 T.C. 252 (1961), affd. per curiam 297 F.2d 837 (3d Cir. 1962). An objective test is applied in determining a taxpayer's "home." Foote v. Commissioner,67 T.C. 1 (1976). It is clear on this record that not only as petitioner's principal place of employment in Maryland during 1977 but he did not have a home in a real and substantial sense in the Buffalo *638 area. During the seven year period from 1974 to 1981 the petitioner worked in Maryland at all times. He never sought employment in Buffalo, although TTSC, the organization he worked for from 1974 through 1977, had offices in that area, and petitioner could have requested an assignment there. Since he had not worked in Buffalo for several years, it is difficult to believe that he seriously considered Buffalo to be his permanent place of abode. Indeed, we think he made a decision to change his home from Buffalo to Maryland. It is significant that petitioner did not maintain a house or an apartment in Buffalo. During the ten weekends he spent there in 1977 he stayed with his brother and paid him about $ 25 per month for housing. His children lived with their mother in that area, and it was natural for him to visit with them and other relatives. But the mere fact that petitioner made periodic visits to see his family in 1977 does not establish that Buffalo was his permanent place of abode. See Crossland v. Commissioner,supra.[2]
*639 The facts in the present case show that the petitioner maintained very little connection with Buffalo once he became employed in Maryland and resided there. When he was in Buffalo he was only visiting; he was not returning to his regular place of abode in a real and substantial sense. He simply did not have a sufficient nexus with Buffalo in 1977 to be able to call it home. In addition, we think the petitioner was not traveling away from home within the purview of section 162(a)(2) because his employment in Maryland in 1977 was indefinite and not temporary. Whether employment is temporary or indefinite is a question of fact. Peurifoy v. Commissioner,358 U.S. 59 (1958), affg. per curiam 254 F.2d 483 (4th Cir. 1957). Employment is temporary only if its termination can be foreseen within a reasonably short period of time. Temporary employment may become indefinite due to changed circumstances or merely the passage of time. Norwood v. Commissioner,66 T.C. 467 (1976); Garlock v. Commissioner,34 T.C. 611 (1960). If the employment while away from home, even if temporary in its inception, becomes substantial or indefinite *640 in duration, the situs of such employment for purposes of section 162 becomes the taxpayer's home. Peurifoy v. Commissioner,supra.Thus, in addition to establishing that he had a home from which to be away in 1977, petitioner must also estblish that the employment away from that home was temporary in nature and not indefinite. He has failed to do so. Petitioner has worked in Maryland continuously since 1974. He worked for TTSC from August 1974 to the end of 1977. During the three years in which he worked for TTSC at Westinghouse in Hunt Valley, Maryland, he worked at the same plant. Thus, he remained physically in the same place at work in Maryland for three years. Petitioner was a versatile engineer, and he worked on a variety of projects while he was employed at Westinghouse. After he left Westinghouse he was employed by TTSC to work at TCOM in Maryland, where he remained for a year and a half. Although petitioner worked on several different projects for Westinghouse, his length of stay reveals the indefiniteness of his employment. When he was first employed by TTSC to work at Westinghouse, his employment may have been temporary. But because he was *641 so versatile and skilled, petitioner was continously kept on by Westinghouse at Hunt Valley, Maryland, for three years. With the passage of time, at least by 1977, Maryland had become petitioner's regular place of employment and tax home. In Norwood v. Commissioner,66 T.C. 467 (1976), the taxpayer was continously reassigned to various jobs with the same employer. We held that the fact that each assignment was of short duration did not make the job temporary and that due to the passage of time the taxpayer's job had become indefinite. The facts in the Norwood case are substantially similar to those in the present case. This petitioner was also working for the same employer doing several different jobs. In Garlock v. Commissioner,34 T.C. 611 (1960), the taxpayer was reassigned by his union to work at four different jobs in two years. He was relocated as the services were needed, but stayed with the same employer. He had a temporary work permit with no assurance of continuation. This Court held that the job may have been temporary originally, but it became permanent with the passage of time. The substantial and actual duration of the taxpayer's *642 employment demonstrated its indefiniteness. We concluded that this work was all one job despite the geographical relocation and that he was not assured of continuation. See also Babeaux v. Commissioner,601 F.2d 730 (4th Cir. 1979), reversing a Memorandum Opinion of this Court. The petitioner in this case was in a similar situation to the taxpayer in Garlock. His employment with TTSC at Westinghouse could have been ended at any time for any reason by either himself or Westinghouse. He had no assurance of continuation. His job was even more permanent than that of the taxpayer in Garlock since he stayed at the same geographical location for three years. After petitioner had worked for TTSC for a couple of years in the Maryland area, the substantial and actual duration of his employment demonstrated its indefiniteness. If the petitioner was interested in returning to Buffalo, and viewed his situation in Maryland as temporary, he certainly would not have formed his own company to do business in Maryland. If he genuinely viewed his job as temporary in Maryland, he would have made some effort to find a job in the Buffalo area where he claims he wanted to return. *643 The facts show, however, that not only did petitioner make no effort to find employment in the Buffalo area, but he also took the affirmative step of starting a new business in Maryland. In Tucker v. Commissioner,55 T.C. 783 (1971), the taxpayer had lived in Tennessee and gone to school there. He applied for a position as a teacher in other cities, and stayed in other cities for a short period of time. We found that he had no prospect of a job in Tennessee, that he had no business connections with Tennessee, and that his choice to live in Tennessee was personal, and not because of employment exigencies. The instant case is even weaker than Tucker because the petitioner here had no prospect of a job in Buffalo and no business connections in Buffalo, and he did not even live in Buffalo. His choice of claiming Buffalo as a "tax home" was clearly a personal choice and had nothing whatsoever to do with his employment in Maryland. Other facts demonstrate that petitioner was not temporarily away from home in Maryland. He did not maintain a permanent place of abode in the Buffalo area in 1977. He had an apartment in Maryland. He maintained a bank account *644 in Maryland. He filed a state income tax return in Maryland. He registered to drive in Maryland. He formed his own company to do business in Maryland at the end of 1977. Accordingly, as reflected in our ultimate findings of fact, we hold that the petitioner's employment in Maryland in 1977 was indefinite and not temporary. We sustain respondent's determination with respect to this issue. Issue 2. Omitted Per Diem
The Form W-2 attached to petitioner's Federal income tax return for 1977 contains an item labeled "taxed EXP," with the amount listed for that category being $ 1,512. That amount represents the per diem paid to petitioner in 1977. That amount is not included in the amount in Box No. 2 of the Form W-2, labeled, "Wages, tips and other Petitioner reported his wages in Box No. 2 of the Form W-2 compensation." on his income tax return, but did not report the $ 1,512 of per diem income. It is respondent's position that such income hould have been reported by petitioner. We agree. The issue of the per diem income was not raised in respondent's statutory notice of deficiency nor pleaded in his answer. When respondent's counsel ascertained that the nonreporting *645 of the per diem may be an issue in this case, she attempted to obtain information regarding it from petitioner's counsel. During the course of the trial preparations respondent's counsel had difficulty in getting the information. Interrogatories were filed but answers to these interrogatories were not received until the day before the hearing was set for respondent's motion to compel answers to interrogatories. Two questions contained in the interrogatories specifically asked petitioner whether he was paid a per diem, and, if so, how much he was paid and for what projects he was paid. The answers to these questions were ambiguous. Respondent's counsel attempted to clarify the issue by asking the petitioner's counsel whether he could provide respondent's counsel with any information that would verify whether or not the per diem had been included in the income in the return. No information was provided. Testimony at the trial of this case made it clear that the per diem amount ($ 1,512) paid to petitioner was not reported by him on his 1977 Federal income tax return. Respondent moved that he be allowed to conform the pleadings to the proof, and claimed an increased deficiency, *646 to include the $ 1,512 of per diem income not reported by petitioner on the return. On this issue respondent has the burden of proof and he has carried it. The motion is granted, and we hold that the amount is includable in petitioner's taxable income for 1977. To reflect concessions by the parties and our conclusions on the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. See and compare Kalmus v. Commissioner,T.C. Memo. 1980-44; Valdez v. Commissioner,T.C. Memo. 1979-90; Fong v. Commissioner,T.C. Memo. 1975-35; and Letscher v. Commissioner,T.C. Memo. 1969-224↩.