JAMES R. L. AND TERESA A. H. PLANTE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Plante v. Commissioner
Docket No. 28046-83.
United States Tax Court
T.C. Memo 1987-355; 1987 Tax Ct. Memo LEXIS 356; 53 T.C.M. (CCH) 1390; T.C.M. (RIA) 87355; July 21, 1987. James R. L. Plante and Teresa A. H. Plante, pro sese. Kirk S. Chaberski, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income taxes for the taxable years 1980 and 1981 in the amounts of $ 3,017.69 and $ 2,482, respectively. After concessions, the issues for decision are, (1) whether petitioners are entitled to deduct certain transportation expenses under section 162(a)(2); [1] (2) whether petitioners are entitled to an investment tax credit for an airplane; and (3) whether petitioners are entitled to a bad debt deduction for amounts not collected from the sale of certain property. [2]
*358 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference. Petitioners, James R. L. Plante and Teresa A. H. Plante, husband and wife, resided in Selmer, Tennessee, at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for the taxable years 1980 and 1981 with the Internal Revenue Service Center in Memphis, Tennessee. Since 1968, James R. L. Plante [3] has been employed by Petroleum Helicopters, Inc. (PHI), as a helicopter pilot. PHI assigned petitioner to various field bases during 1980 and 1981. The assignments originated at PHI's operational headquarters in Lafayette, Louisiana. PHI regularly informed petitioner of each new assignment by telephone. Prior to July 1980, petitioner and his family resided in Greensburg, Louisiana. [4] They lived in an isolated area and in July 1980, petitioner and his family moved to Selmer, Tennessee because his wife's family lived there and he felt she would be better protected and cared for while *359 he was at work. Petitioner also moved to Selmer in the hope of being assigned to the Atlantic City, New Jersey field base. He felt he had a better opportunity to be assigned there if he lived closer. However, petitioner's chances of a permanent assignment in Atlantic City subsequently fell through and petitioner started working on field bases on the Gulf Coast. As petitioner was being assigned to the Gulf Coast, he decided to purchase an airplane because it allowed him to travel from Selmer to Lafayette in 2-1/2 hours as opposed to 10-1/2 hours by automobile. When PHI assigned petitioner to a field base within Louisiana, petitioner generally flew his airplane from his home in Selmer to PHI's operational headquarters in Lafayette. He then drove to the assigned field base in an automobile, which he maintained in Lafayette. When PHI assigned petitioner to Atlantic City, he either traveled commercially at PHI's expense or traveled on PHI's airplane. During the taxable years 1980 and 1981, PHI authorized its pilots to claim mileage from their residence to their assigned field base on the first day of each assignment *360 and from the field base to their residence on the last day of the assignment. PHI reimbursed its pilots at a rate of 10 cents per mile from the pilot's residence or from Lafayette, whichever was the lesser distance from the assigned field base, less a 25-mile deductible. During the taxable year 1980 petitioner worked approximately 15 weeks in Intracoastal City, Louisiana or Morgan City, Louisiana, [5] 4 weeks in Atlantic City, New Jersey, 1 week in Great Plains, Texas, and 1 week in Galveston, Texas. [6] During the taxable year 1981 petitioner worked approximately 17 weeks in Intracoastal City/Morgan City, Louisiana, 3 weeks in Atlantic City, New Jersey, 2 weeks in Galveston, Texas, 2 weeks in Hyannis, Massachusetts, and 1 week in Houma, Louisiana. With respect to the assignments on the Gulf Coast, petitioner usually worked 7-day shifts, meaning he was on duty for 7 days and off duty for 7 days. With respect to the other assignments, he usually worked 14-day shifts. For the taxable years 1980 and 1981, petitioner received wages of $ 37,273.94 and $ 45,585.39, respectively, from PHI. *361 On their Federal income tax returns for the taxable years 1980 and 1981, petitioners deducted $ 4,134 and $ 3,823, respectively, as employee business expenses. The amounts were attributable to meals, lodging, airfare, and automobile expenses. On their Federal income tax returns for the taxable years 1980 and 1981, petitioners also deducted $ 3,985 and $ 4,015, respectively, attributable to expenses related to the airplane. On their Federal income tax return for the taxable year 1980, petitioners also claimed an investment tax credit on the airplane. In August 1981, petitioner started a business in Selmer under the name "The Boat Shop." The business, operated as a partnership, provided a repair service for boat motors in 1981. Petitioner was responsible for the financial aspects of the business. On their Federal income tax return for the taxable year 1981, petitioners reported a net loss of $ 3,951 from the partnership. Sometime prior to September 1979, petitioners purchased a parcel of land from Carl and Sylvia Lanier. As consideration for the purchase, petitioners assumed the Lanier's mortgage. In September 1979, petitioners sold the land back to the Laniers. As part *362 of the consideration for the repurchase, the Laniers executed a promissory note for $ 500. The promissory note dated September 24, 1979, was non-interest-bearing and provided for payment in 90 days. Late in 1979, petitioners also sold to the Laniers for $ 1,000, a building which petitioners had used as temporary quarters while they were building their house. The Laniers did not execute a note. Petitioners simply told Lanier that he would add the $ 1,000 to the amount due under the $ 500 promissory note given in September 1979. At the time of this sale, the $ 500 promissory note was delinquent. Lanier was a construction worker who was out of work at the time and had been for several months. Petitioners made no attempt to collect the $ 1,500 due them as a result of these transactions from the Laniers. On petitioner's trips from Selmer to his assignments, he would occasionally pass through Greensburg. On one trip in 1981, petitioner found out that the Laniers had moved and had also moved the building. Attempts to contact the Laniers proved unsuccessful. On their Federal income tax return for the taxable year 1981, petitioners deducted the $ 1,500 as a nonbusiness bad debt. *363 The Commissioner, in his statutory notice of deficiency, disallowed $ 1,435.87 and $ 1,908.14 of the employee business expenses claimed for the taxable years 1980 and 1981, respectively. The disallowed amounts represent airfare and a portion of the automobile expenses. The Commissioner also disallowed all of the expenses attributable to the airplane for the taxable year 1980 and all but $ 9.35 of the expenses attributable to the airplane for the taxable year 1981. The disallowed employee business expenses and airplane expenses represent amounts incurred by petitioner in traveling from Greensburg or Selmer to Lafayette. The Commissioner also disallowed the investment tax credit on the airplane and the nonbusiness bad debt deduction. OPINION Transportation Expenses
Section 162(a)(2)[7] allows a taxpayer to deduct his expenses for meals, lodging, and transportation incurred while "away from home" in the pursuit of a trade or business. Section 262 prohibits deductions for personal, living, or family expenses. There are three criteria for determining whether travel expenses are *364 deductible under section 162(a)(2), (1) the expenses must be reasonable and necessary; (2) they must be incurred while "away from home"; and (3) they must be incurred in the pursuit of a trade or business. This means that there must be a direct connection between the expenditure and the conduct of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary and appropriate to the development and pursuit of the trade or business. Commission v. Flowers,326 U.S. 465, 470 (1946). In order to be deductible, an expenditure must satisfy all three conditions. This Court has consistently *365 defined the word "home" as used in section 162(a)(2) to refer to the vicinity of a taxpayer's principal place of employment and not where his personal residence is located. [8]Mitchell v. Commissioner,74 T.C. 578, 581 (180); Foote v. Commissioner,67 T.C. 1, 4 (1976); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). [9] If a taxpayer does not have a principal place of employment he may treat a permanent place of residence at which he incurs substantial continuing living expenses as his tax home. Cf. Rambo v. Commissioner,69 T.C. 920 (1978). *366 The purpose of the "away from home" deduction is to "mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Kroll v. Commissioner, supra at 562. The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks whether it is reasonable in a particular case to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of living expenses. Kroll v. Commissioner, supra at 562. On the other hand, if a taxpayer chooses for personal reasons to maintain a family residence far from his principal place of employment, then his additional traveling and living expenses are incurred as a result of that personal choice, and are not deductible. Tucker v. Commissioner,55 T.C. 783, 786 (1971). Petitioner contends that he did not have a principal place of business and that his personal residence was his home for tax purposes. Respondent contends that Lafayette, *367 the operational headquarters of PHI, was the principal place of business of petitioner and, therefore, his tax home. Whether petitioner has a principal place of business is a factual issue and the burden of proof is on petitioner. Rambo v. Commissioner, supra;Rule 142(a). We find the case of Daly v. Commissioner,72 T.C. 190 (1979), revd. 631 F.2d 351 (4th Cir. 1980), revd. on rehearing en banc 662 F.2d 253 (4th Cir. 1981), to be of controlling significance. In Daly the taxpayer was employed as a district sales manager and was assigned to a sales territory including Delaware, New Jersey, and eastern Pennsylvania. He and his family resided, however, in McLean, Virginia, a suburb of Washington, D.C. The taxpayer maintained an office in his home in McLean at which he performed some tasks incidental to his employment. His most important duties were the sale and promotion of his employer's products in his sales district by making personal calls on customers and potential customers. The taxpayer's usual routine was to travel *368 each week from McLean to a location in his territory to make sales calls, stay there two nights, and return to McLean. Forty-four percent of these sales trips were to Philadelphia itself or locations within 28 miles of Philadelphia, and 80 percent of these sales trips were to locations within 88 miles of McLean. The taxpayer chose to maintain his home and office in McLean, rather than inside his sales territory, to allow his wife to keep her Washington, D.C., job and to avoid the inconvenience of selling his home and moving his family. We held that the taxpayer's "tax home" was the Philadelphia area because it was the center of his income-producing activity and because his only reasons for maintaining his home and office in McLean rather than in his sales territory were personal. Daly v. Commissioner, supra at 196. [10]
In the instant case, petitioner has worked for PHI since 1968. For the taxable years 1980 and 1981, petitioner worked approximately *369 71 percent and 68 percent of the time, respectively, in Intracoastal City/Morgan City. This can fairly be characterized as the center of petitioner's income-producing business activities and, therefore, his tax home. See Wills v. Commissioner,48 T.C. 308, 312-313 (1967), affd. 411 F.2d 537 (9th Cir. 1969); Green v. Commissioner,35 T.C. 764, 766-767 (1961), affd. per curiam 298 F.2d 890 (6th Cir. 1962). Thus,he was not "away from home" when he was in Intracoastal City/Morgan City. The fact that petitioner became involved in The Boat Shop in Selmer does not change our conclusion. When a taxpayer has two places of business or employment at a considerable distance from one another, his designation of one as his abode, if different from the place where he spends more time, engages in greater business activity, and derives a greater proportion of his income, is not dispositive of which location is his home for the purpose of deducting traveling expenses. Markey v. Commissioner,490 F.2d 1249, 1255 (6th Cir. 1974), *370 revg. a Memorandum Opinion of this Court. [11] The record does not indicate the time spent or the volume of work performed by petitioner in pursuit of the partnership business. However, for the taxable year 1981 petitioner received wages of $ 45,585.39 from PHI and reported a $ 3,951 loss from the partnership. Petitioner relies on Ireland v. Commissioner,T.C. Memo. 1979-386, for the opposition that he did not have a principal place of business and that his personal residence was his home for tax purposes. This reliance is misplaced. In Ireland the taxpayer resided in Lowland, North Carolina and was employed as a tugboat crew member by a company that had its principal office in Camden, New Jersey. He worked on a tugboat with a homeport of Philadelphia, Pennsylvania; however, its work took it up and down the eastern seaboard and its activities were not centered in the Philadelphia area. The taxpayer's employment required *371 that he be on duty for 2 consecutive weeks and then off duty for 2 consecutive weeks. While on duty, he lived aboard the tugboat and performed the duties assigned to him. While off duty, he lived at his home in Lowland. He was not required to report to the company's office but, rather, reported directly to the tugboat at the point where it happened to be located on the date of a crew change. Similarly, when he completed a 2-week period of work on board the tugboat, he would go ashore at the point where the tugboat happened to be at that time. In two of the taxable years in issue, he did not have a crew change in Philadelphia and in the other taxable year in issue only 4 out of 26 crew changes took place in Philadelphia. On a significant number of occasions during the taxable years in issue, his crew changes occurred at points closer to Lowland than Philadelphia. The taxpayer deducted expenses paid to a carpool, which drove to and from the tugboat, as well as 15 cents per mile for each mile traveled between his home and the point where the carpool met. Respondent argued that Philadelphia was the taxpayer's principal place of business and, therefore, the expenses were not incurred *372 while "away from home." We held that the taxpayer had no principal place of business and that his residence was his home for purposes of section 162(a)(2). Ireland v. Commissioner, supra. Although the homeport of the tugboat was Philadelphia,the taxpaer rarely and only coincidentally met the tugboat or departed from it in Philadelphia. The nature of his business required that he at least be prepared to be at a different place every two weeks for a crew change. He had no regular place of duty that could be called his tax home or to which he could reasonably have been expected to move. In the instant case, however, petitioner worked approximately 70 percent of the time in Intracoastal City/Morgan City. Petitioner had a principal place of business; he had a regular place of duty that could be called his tax home. Furthermore, petitioner has failed to show that he incurred the transportation expenses by reason of business exigencies. The record does not indicate why petitioner chose to live in Greensburg. Petitioner and his family moved to Selmer because his wife's family lived there and he felt she would be better protected and cared for while he was at work. *373 This is clearly a personal reason. Petitioner also moved to Selmer in the hope of being assigned to the Atlantic City field base. However, there was no agreement with PHI that if petitioner moved to Selmer he would be assigned to Atlantic City. We think that petitioner had only personal reasons for maintaining his residence in Greensburg and Selmer and that he incurred additional transportation expenses that were "as unnecessary and inappropriate to" the conduct of his employer's business as "were his personal and living costs in" Greensburg and Selmer. Commissioner v. Flowers,326 U.S. 465, 473 (1964). [12] Therefore, the transportation expenses incurred by petitioner in traveling from Greensburg or Selmer to Intracoastal City/Morgan City were not incurred in the pursuit of the business of petitioner's employer, PHI. Accordingly, we conclude that petitioners are not entitled to deduct the airfare, automobile expenses, and airplane expenses which the Commissioner disallowed.[13]
*374 Investment Tax Credit
Section 38 provides a credit for investment in certain depreciable property. The credit is available for tangible personal property with respect to which depreciation (or amortization) is allowable. Sec.48(a)(1)(A). Depreciation is allowable only for property used in a trade or business or held for the production of income. Sec. 167(a). We have previously concluded that the airplane expenses were not deductible as they were personal expenses. Petitioner's purchase and use of a private airplane was based upon his personal preference to maintain a residence distant from his principal place of employment. Therefore, depreciation is not allowable with respect to the airplane as it was not used in a trade or business or held for the production of income. Accordingly, the airplane is not eligible for the investment tax credit. Bad Debt
Section 166(d)(1)[14] provides that where a nonbusiness bad debt becomes worthless within the taxable year, the loss shall be *375 considered a loss from the sale or exchange of a capital asset held for not more than one year. To qualify for a worthless debt deduction, petitioners must show that they and their alleged debtor intended to create a debtor-creditor relationship, that a genuine debt in fact existed, and that the debt became worthless within the taxable year. Sec. 1.166-1(c), Income Tax Regs.; Andrew v. Commissioner,54 T.C. 239, 244-245 (1970). Petitioners bear the burden of proof. Rule 142(a).
Petitioners contend that they are entitled to a $ 1,500 bad debt deduction for the taxable year 1981. Respondent contends that petitioners did not prove *376 that the debts became worthless in 1981 and that with respect to the $ 1,000 there was not a valid debtor-creditor relationship between petitioners and the Laniers. With respect to the sale of the land in 1979, the Laniers executed a promissory note in favor of petitioners. However, the execution of a note does not necessarily establish the existence of a bona fide debt. Estate of Van Anda v. Commissioner12 T.C. 1158, 1162 (1949), affd. per curiam 192 F.2d 391 (2d Cir. 1951); Wolff v. Commissioner,26 B.T.A. 622, 625 (1932). We think that the background of this sale is significant when considered in conjunction with the testimony of petitioner concerning Carl Lanier. Sometime prior to September 1979, petitioners purchased the land from the Laniers. As consideration for the purchase, petitioners assumed the Laniers' mortgage. In September 1979, petitioners reconveyed the land to the Laniers. As part of the consideration for the repurchase, the Laniers executed a promissory note for $ 500. Petitioner testified that Carl Lanier *377 was a poor country boy and a hard-working man. He was a construction worker who as of sometime late in 1979, was out of work and had been for several months. Therefore, Carl Lanier was in all probability unemployed at the time of the reconveyance. Petitioners made no attempt to collect payment on the $ 500 promissory note. Petitioner testified that any efforts to do so would have been useless. He further testified that Carl Lanier would give you the shirt off his back, so there was no reason to initiate collection efforts; if he had the money he would pay. We realize that the law does not require petitioner "to do a useless act." Sherman v. Commissioner,18 T.C. 746, 752 (1952); cf. sec. 1.166-2(b), Income Tax Regs. However, when considered in conjunction with the circumstances of the sale, it is a strong indication that petitioners did not intend at the time the note was executed to seek payment. Moreover, when petitioners moved to Selmer, they did not take any steps to protect or preserve their interest. We conclude that with respect *378 to the $ 500 promissory note petitioners have not established that they and Lanier intended to create a debtor-creditor relationship or that a genuine debt in fact existed. Accordingly, petitioners are not entitled to a bad debt deduction. With respect to the sale of the building in 1979, the Laniers did not execute a note in favor of petitioners. There was no evidence of indebtedness, no provision for interest, no schedule of payments or fixed maturity date. At the time of the sale, the $ 500 promissory note was delinquent, and yet petitioner told Lanier that he would just consider the $ 1,000 as part of that note. Petitioner testified that the building was in his front yard and that he wanted it out of his front yard but could not afford the moving costs. Petitioner further testified that Lanier offered him $ 1,000 for the building. Lanier was unemployed at the time and had been for several months and petitioner testified that Lanier was the type of man who would not take charity. This scenario indicates that petitioner had a building in his front yard which he wanted removed but that he could not afford the removal costs. He may have been inclined to give the building *379 to Lanier if he would move it but Lanier probably would not have taken it without offering to pay for it. When Lanier offered petitioner $ 1,000 for the building, he viewed it as an acceptable solution. Petitioners also made no attempt to collect the $ 1,000 and our discussion with respect to the $ 500 promissory note is equally applicable here. These factors strongly militate against a finding that with respect to the $ 1,000 petitioners and Lanier intended to create a debtor-creditor relationship or that a genuine debt in fact existed. Accordingly, petitioners are not entitled to a bad debt deduction. In view of our conclusion, it is unnecessary to consider the contention of respondent that petitioners have not proved worthlessness within the taxable year 1981. To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all Rule references are to the Rules of Practice and Procedure of this Court. ↩
2. Our decision on these issues will necessarily determine petitioners' deduction for medical and dental expenses for the taxable year 1981. ↩
3. All subsequent references to petitioner in the singular are to James R. L. Plante. ↩
4. Greensburg is approximately 140 miles northeast of Lafayette. ↩
5. Intracoastal City is approximately 70 miles west of Morgan City. These two cities will be referred to as Intracoastal City/Morgan City. Lafayette is approximately 22 miles north of Intracoastal City. ↩
6. Information regarding the assignments of petitioner during October and November was not introduced into evidence. ↩
7. Section 162(a)(2) provides: (a) IN GENERAL. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * ↩
8. The U.S. Court of Appeals for the Sixth Circuit (the court to which this decision is appealable), has generally defined "home" as the taxpayer's principal place of business. See Markey v. Commissioner,490 F.2d 1249↩ (6th Cir. 1974). 9. This rule applies as long as the principal place of business is not temporary as opposed to indefinite. Kroll v. Commissioner,49 T.C. 557, 562-563↩ (1968). We note that petitioner has been employed by PHI since 1968 and there is no evidence that the percentage of assignments in Intracoastal City/Morgan City is in any way unrepresentative of the pattern of petitioner's assignments in prior years. 10. See also Feese v. Commissioner,T.C. Memo. 1984-46; Paolini v. Commissioner,T.C. Memo. 1982-69, affd. without published opinion 707 F.2d 1394↩ (3d Cir. 1983). 11. See Gardin v. Commissioner,64 T.C. 1079 (1975); Montgomery v. Commissioner,64 T.C. 175 (1975), affd. 532 F.2d 1088 (6th Cir. 1976), wherein we adopted the rationale of Markey.↩
12. In Commissioner v. Flowers,326 U.S. 465↩ (1946), the taxpayer's principal place of employment was Mobile, Alabama, but he continued to live in Jackson, Mississippi, and traveled to Mobile whenever his work required him to be there. The Court found that such travel was not required by the exigencies of his employment, but resulted from his personal choice to live in Jackson. Since his principal place of employment was in Mobile, he could reasonably have been expected to move there, and then such travel would have been unnecessary.
13. The Commissioner treated PHI's operational headquarters in Lafayette as the tax home of petitioner and allowed the deduction for travel costs from the headquarters to the field bases. He made no determination in the alternative that Intracoastal City/Morgan City was petitioner's tax home nor did he seek to amend his answer. ↩
14. Section 166(d)(1) provides: (1) GENERAL RULE. -- In the case of a taxpayer other than a corporation -- (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year. ↩