JEFFREY J. PRIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pries v. Commissioner
Docket No. 660-89
United States Tax Court
T.C. Memo 1991-177; 1991 Tax Ct. Memo LEXIS 198; 61 T.C.M. (CCH) 2442; T.C.M. (RIA) 91177; April 17, 1991, Filed *198 Decision will be entered under Rule 155. Chester A. Swart, for the petitioner. Sherri Spradley, for the respondent. RAUM, Judge. RAUM
MEMORANDUM OPINION The Commissioner determined a deficiency in income tax in the amount of $ 1,235 against Jeffrey J. Pries (petitioner) for his 1985 taxable year. The Commissioner also determined additions to tax under section 6653(a)(1) and (2), in the amounts of $ 61.75 and 50 percent of the interest due on $ 1,235, respectively. [1] This case was submitted on the basis of a stipulation of facts and exhibits. Petitioner resided in Newport Beach, California, when he filed the petition herein. He claimed a deduction for 1985 in respect of expenses paid for meals and lodging in Fort Lauderdale, Florida, when he was playing baseball for the Fort Lauderdale Yankees. The issue for decision is whether petitioner was "away from home" at that time so as to qualify for such deduction under section 162(a)(2). *199 Petitioner was a professional baseball player during the years 1984 through 1987. The record does not show that he was gainfully employed in baseball or in any other activity prior to 1984. On June 5, 1984, he entered into a contract to play baseball during the remainder of 1984 for the Oneonta Yankees, a minor league baseball team located in Oneonta, New York. The Oneonta Yankees Club was one of the New York Yankees' farm teams. The contract was on a printed form captioned "NATIONAL ASSOCIATION OF PROFESSIONAL BASEBALL LEAGUES Uniform Player Contract." The names of the parties, date, compensation, etc., were left to be added in blank spaces provided therefor. Petitioner's contract, as thus filled in, was formally between himself and the Oneonta Yankees Club. His salary was stated to be $ 700 a month, and he was in fact paid a total of $ 1,750 as salary for the remainder of the 1984 season. The contract gave the Oneonta Yankees six successive options to renew the contract, each for a term of one year. In a handwritten insert, the contract provided for a "signing bonus" of $ 92,500. The parties before us have stipulated that the bonus was to be paid in two equal installments *200 by the New York Yankees, who were not parties to the contract. Petitioner was to receive the first $ 46,250 installment upon the approval of his contract by the President of the National Association of Professional Baseball Leagues, and was to receive the second $ 46,250 installment on January 15, 1985. The president approved the contract on June 26, 1984, and petitioner received the first installment prior to the end of 1984. The exact date is not revealed by the record. He received the second installment on January 10, 1985. The contract described petitioner's home address as "1710 Port Barmouth, Newport Beach, California." Because the stipulation of the parties states that "when in Newport Beach, California, petitioner lived with his parents during 1984-1987," we conclude that 1710 Port Barmouth was the address of his parents' house in Newport Beach. Petitioner played baseball for the Oneonta Yankees from July 7, 1984 until August 30, 1984. For some period during that year, he also worked for the Ritz Hotel in Newport Beach, California, from which he received wages of $ 1,029. The record does not disclose the dates on which petitioner worked for the hotel, or the nature *201 of his duties there, nor does it disclose that he ever worked there again in any other year or worked for any other hotel. Petitioner lived with his parents in Newport Beach from January 1, 1985 until March 9, 1985. On March 10, he began his stay in Fort Lauderdale, Florida. On April 11, 1985, he signed a contract to play baseball for the Fort Lauderdale Yankees, another of the New York Yankees' minor league farm teams, which was located in Fort Lauderdale, Florida. This contract was on a form substantially the same as the one he had signed with the Oneonta Yankees the previous year, and similarly gave the Fort Lauderdale Yankees six successive options to renew for one year each. However, it did not contain any comparable provisions for a signing bonus. The Fort Lauderdale Yankees paid petitioner a salary of $ 700 per month in accordance with their contract, for a total of $ 4,440.05 for the 1985 baseball season. Petitioner was present in Fort Lauderdale through September 3, 1985, except for the periods when he was "on the road" with his team to play baseball against other minor league teams in their respective home cities. After the baseball season ended, he returned to Newport *202 Beach, where he again lived in his parents' house from September 4 through the end of the year. The record contains no indication that petitioner paid rent in any form to his parents in exchange for living at their house. While in Fort Lauderdale, petitioner spent $ 1,324 on lodging and $ 1,260 for meals. [2] *203 He claimed a deduction for these amounts pursuant to section 162(a)(2), which allows a deduction for ordinary and necessary traveling expenses incurred "while away from home in the pursuit of a trade or business." [3] The Commissioner determined that petitioner's foregoing expenses did not qualify under section 162(a)(2) and were therefore nondeductible by reason of section 262. [4] We sustain the Commissioner's determination. In order for living expenses to qualify for the section 162(a)(2) deduction, three conditions must be satisfied: First, the expenses must be reasonable and necessary; second, the taxpayer must incur the expenses while away from home; and third, the expenses must be incurred in pursuit of a trade or business. See Commissioner v. Flowers, 326 U.S. 465, 470, 90 L. Ed. 203, 66 S. Ct. 250 (1946); Barone v. Commissioner, 85 T.C. 462, 465 (1985), affd. *204 without published opinion 807 F.2d 177 (9th Cir. 1986). The Commissioner concedes that the expenses incurred by petitioner satisfy the first and third requirements, but contends that petitioner was not "away from home" within the meaning of section 162(a)(2) while he was in Fort Lauderdale, Florida, during the 1985 baseball season. Petitioner bears the burden of proving that he was away from home. See Rambo v. Commissioner, 69 T.C. 920, 924-925 (1978). In order for a taxpayer to prove that he was away from home, he must first demonstrate that he had a well-established tax home from which he could be away. Bochner v. Commissioner, 67 T.C. 824, 828 (1977); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). We must therefore determine whether petitioner had a tax home prior to the beginning of his stay in Florida. It is petitioner's position that Newport Beach was his tax home. A taxpayer's tax home is generally his principal place of business. Barone v. Commissioner, supra. However, even without a principal place of business, a taxpayer may treat the location of his permanent residence *205 as his tax home if he incurs "substantial continuous living expenses" there. [5]Barone v. Commissioner, supra at 465. In our judgment petitioner has failed to bring himself within either of these grounds for finding that Newport Beach was his tax home. In the first place, he has *206 failed to establish that Newport Beach was his principal place of business. One factor to consider in determining which of two locations is the taxpayer's principal place of business is the amount of income received by the taxpayer from his activities in each location. See Montgomery v. Commissioner, 64 T.C. 175, 179-180 (1975), affd. 532 F.2d 1088 (6th Cir. 1976). There is no evidence that petitioner received any income prior to 1984 attributable to his activities in Newport Beach. And during 1984 his only activity in Newport Beach that could even be regarded as "business" was his work of an undisclosed nature during the baseball off-season at a hotel. This employment yielded total wages of $ 1,029 and can scarcely justify treating Newport Beach as his principal place of business in 1984 in the light of his compensation for playing baseball for the Oneonta Yankees in Oneonta, New York, and the $ 46,250 installment signing bonus relating to his playing baseball elsewhere than in Newport Beach. Moreover, during the tax year 1985, the record fails to disclose any income whatever from any activity having its source in Newport Beach. [6] Yet his *207 income that year included $ 4,440.05 wages from the Fort Lauderdale Yankees for playing baseball with that team plus the second $ 46,250 installment signing bonus relating solely to playing baseball, certainly not in Newport Beach. The fortuitous circumstance that the $ 46,250 check may have been delivered to petitioner in Newport Beach hardly establishes that he carried on a business activity in Newport Beach, or that his presence there served his employer's business. See Commissioner v. Flowers, supra at 473. In the second place, petitioner has woefully failed to prove that he had a permanent residence in Newport Beach where he incurred "substantial continuous living expenses" that would qualify *208 Newport Beach as his tax home. The record is utterly barren of evidence that he maintained any home in Newport Beach. He merely lived there with his parents when he was not playing professional baseball elsewhere. The record fails to show that he paid his parents anything for staying at their home or contributed in any way, directly or indirectly, towards its maintenance. He has not proved that he incurred any expenses whatever in respect of any home in Newport Beach that might even remotely suggest that he was incurring duplicate expenses in Fort Lauderdale in 1985 -- a significant, but not necessarily conclusive, [7] factor in determining whether a taxpayer is "away from home." In this respect, petitioner's case is even weaker than that of the taxpayer in Barone, supra, who resided with his parents when not "on the road" and contributed towards the maintenance of the Barone family home, but was nevertheless held not to have a tax home at that residence in the circumstances present in that case. *209 We are satisfied that petitioner has not carried his burden of proof to establish that he had a tax home in Newport Beach. In short, he had no tax home in Newport Beach to be "away from." Petitioner argues that his employment with the Fort Lauderdale Yankees was temporary, not indefinite, so that he was away from home within the meaning of section 162. However, as indicated above, note 5, a taxpayer must first prove he has a tax home before he can successfully contend that he was temporarily away from that home. See Bochner v. Commissioner, supra; Kroll v. Commissioner, supra; Commissioner v. Peurifoy, 254 F.2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958). We have already found that petitioner had no tax home prior to his departure for Fort Lauderdale. It therefore does not matter whether petitioner's employment in Fort Lauderdale was temporary or permanent; in either case, he was not "away from home." In the circumstances we do not consider the various other contracts (also on the same type of printed form) with various minor league teams in 1986 and 1987, and the comparably short *210 periods of time that he spent working under such contracts. They are relevant, if at all, only in respect of petitioner's argument that he was temporarily rather than indefinitely away from home, which has no relevance given the ground on which we have decided this case. The Commissioner determined additions to tax under section 6653(a)(1) and (2), which provided for additions to tax in the case of an underpayment due to negligence or intentional disregard of rules or regulations. [8] Petitioner had the burden of proving that he was not negligent and did not disregard any rules and regulations when he claimed deductions for the lodging and meals he purchased in Fort Lauderdale, Florida. Vnuk v. Commissioner, 621 F.2d 1318, 1321 (8th Cir. 1980); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). To sustain this burden, petitioner must show that he used due care in preparing his return, and that he acted reasonably and prudently under the circumstances. See Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. on this issue 43 T.C. 168 (1964), and a Memorandum Opinion of this Court. *211 Petitioner did not present any evidence that he used due care or acted reasonably and prudently under the circumstances when he claimed the deduction here at issue. Even a cursory inspection of the relevant cases would have revealed that petitioner could not successfully claim to have a tax home in Newport Beach unless he had a principal place of business or substantial and continuous living expenses attributable to a permanent place of residence there. Because he claimed his deduction without proving that he had either of these, we sustain the Commissioner's determination of additions to tax. Decision will be entered under Rule 155.
Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable year at issue.↩
2. This case presents no issue regarding the deductibility of petitioner's expenditures for lodging and meals while "on the road" with the Fort Lauderdale Yankees in other cities to play other minor league teams. The Commissioner allowed petitioner's claimed deductions for his meals and lodging expenses while thus away from Fort Lauderdale. This case involves only the deductibility of his expenses incurred for meals and lodging in Fort Lauderdale.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including -- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
4. Sec. 262. PERSONAL, LIVING AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
5. If the taxpayer succeeds in establishing that he had such a tax home at the time he departed for his new employment, he must then establish that his absence was temporary rather than indefinite, for if it was indefinite, then his tax home will be held to have moved with him. Kroll v. Commissioner, 49 T.C. 557, 562 (1968); Commissioner v. Peurifoy, 254 F.2d 483, 486 (4th Cir. 1957), affd. per curiam 358 U.S. 59↩ (1958). Petitioner's principal contention is that his presence in Fort Lauderdale was temporary. However, we do not even reach that contention, since, as we conclude herein, petitioner has not shown that he had a tax home elsewhere to be "away from."
6. Petitioner's 1985 return does disclose $ 483 in dividend income as well as $ 1,817 in interest income, but the record fails to show that these items reflected anything more than passive income involving no business activity or even that as passive income they had their source in Newport Beach.↩
7. Wills v. Commissioner, 48 T.C. 308 (1967), affd. 411 F.2d 537↩ (9th Cir. 1969).
8. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income, Gift, or Windfall Profit Taxes. -- (1) In general. -- If any part of any underpayment * * * is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. (2) Additional amount for portion attributable to negligence, etc. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to the negligence or intentional disregard referred to in paragraph (1) * * *↩