T.C. Memo. 2017-195

UNITED STATES TAX COURT

JOHN S. BARRETT AND MARIA T. BARRETT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN S. BARRETT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 11307-16, 11322-16.          Filed October 2, 2017.

Thomas Edmund Crowe, for petitioners.

Michael W. Lloyd, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies, additions to tax, and

penalties as follows:

[*2] John S. Barrett and Maria T. Barrett, Docket No. 11307-16

| Year | Deficiency | Penalty sec. 6662(a) | Addition to tax sec. 6651(a)(1) |
|------|-----------|----------------------|--------------------------------|
| 2011 | $7,839 | $1,567.80 | -0- |
| 2012 | 11,825 | 2,365.00 | $950.25 |
| 2013 | 4,151 | -0- | -0- |

John S. Barrett, Docket No. 11322-16

| | | Additions to tax | | |
|------|-----------|----------------|----------------|----------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2014 | $18,952 | $3,871.58 | [1]$860.35 | $305.50 |

[1]This amount reflects the addition to tax under I.R.C. sec. 6651(a)(2) only through the date of the notice of deficiency. The addition to tax will continue to accrue from the due date of the return at a rate of 0.5% per month, or fraction thereof, of nonpayment, not to exceed 25%.

After concessions, the issues for decision are: (1) whether John S. Barrett (petitioner) was "away from home" when performing video production services in Washington, D.C. (DC); (2) whether petitioners have substantiated deductions in excess of those previously allowed; and (3) whether petitioners are liable for the determined additions to tax and penalties. All section references are to the

[*3] Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Although the parties executed two stipulations, those stipulations served only to introduce copies of exhibits and did not contain any agreed narrative of undisputed facts. See Rule 91(a). Because the hearsay contents of the exhibits (tax returns, bank records, card statements, and receipts) are disputed, our findings cannot incorporate the stipulations wholesale.

Petitioners resided in Las Vegas, Nevada, at all material times. They purchased rental properties in the area of Las Vegas as investments toward retirement. Petitioner arranged for and supervised repairs on the rental properties. Petitioners reported losses from the rental activities of $14,176, $8,233, and $3,434 during 2011, 2012, and 2013, respectively. In a joint return for 2014 submitted after the notice of deficiency was sent to petitioner for that year, petitioners reported net income of $18,784 for the four properties.

Petitioners received various other items of income during the years in issue, including wages earned by Maria T. Barrett (petitioner's spouse), who was employed as a cocktail waitress in Las Vegas. Their primary source of income for many years through early 2016, and the subject of the current dispute, was

[*4] petitioner's business as a video producer for the American Israel Public Affairs Committee (AIPAC).

Petitioner has been in the video production business since the mid-1980s and began working with AIPAC in 1995. He occasionally performed services for other persons but did not receive any income for such services during the years in issue. Video production includes writing scripts and reviewing footage, much of which petitioner did out of an office in his Las Vegas home. Interviews relating to the videos were conducted in various locations around the world.

Before 2007 petitioner produced videos for AIPAC using studio facilities in Las Vegas. In 2007 AIPAC built a new building in DC. Petitioner advised AIPAC to include a recording studio with editing facilities and a library for videos and audios in order to save money. AIPAC agreed, and petitioner helped design and build the studio. Thereafter AIPAC required petitioner to travel to DC to use the editing facilities and the library at AIPAC's building to perform postproduction activities. Petitioner continued to write scripts and perform preproduction services in his Las Vegas home. The average duration of petitioner's stays in DC was two weeks. Initially he stayed at hotels, but from 2007 through June 2013 he rented a condominium apartment because he and AIPAC agreed that an apartment would be more cost efficient than hotel

[*5] stays.  AIPAC reimbursed petitioner for some meals and expenses when he was in DC.

Petitioner did not maintain separate credit cards for business and personal expenses, and petitioner's spouse used the same credit card account for her purchases not related to petitioner's business.  During 2014 petitioner incurred expenses for travel to DC in relation to his work for AIPAC, including the following items shown on his credit card receipts paid in 2014.

| Items on 2014 credit card receipts | Month | Amount incurred |
|---|---|---|
| U.S. Airways round trip tickets to DC | January | $502.30 |
| | February | 626.00 |
| | July | 678.00 |
| | August | 552.20 |
| Washington Plaza Hotel | January | 244.50 |
| Fairfield Inn, DC | July | 2,049.60 |
| | August | 2,459.52 |
| Taxis charged | January | 10.44 |
| Total | | 7,122.56 |

One round trip ticket for travel between Las Vegas and DC in 2014 represented petitioner's trip home to Las Vegas for the weekend in the middle of his work in DC.  Other items shown in the credit card records, e.g., payments to Hotels.com or

[*6] miscellaneous hotel bills, could not be identified as for a hotel in DC or could not be allocated between deductible and nondeductible meals expenses.

Petitioner reported his income from AIPAC on Schedules C, Profit or Loss From Business. His gross receipts from AIPAC were $132,810 for 2011, $121,328 for 2012, $75,695 for 2013, and $63,182 for 2014. On Schedules C attached to joint returns they filed for 2011, 2012, and 2013, petitioners reported travel, meals, and entertainment expenses of $55,383, $49,882, and $26,363, respectively. On an untimely return submitted for 2014, petitioners reported travel, meals, and entertainment expenses of $24,502.

In the notice of deficiency for 2011, 2012, and 2013 deductions for travel, meals, and entertainment expenses totaling $26,576, $23,969, and $12,284, respectively, were allowed. Sales taxes claimed as itemized deductions were disallowed to the extent of $7,503 for 2011, $5,392 for 2012, and $4,402 for 2013. Other minor and computational adjustments were made, but petitioners have addressed only the travel, meals, and entertainment expenses through evidence or in their posttrial brief.

Petitioners' 2011 return was filed in September 2013. Petitioners' 2012 tax return was filed in April 2015. Their 2014 return was not submitted until April

**[*7]** 2016, after the Internal Revenue Service had prepared a substitute for return under section 6020(b) and sent petitioner the notice of deficiency for that year.

OPINION

The primary dispute identified by the parties is whether petitioner was "away from home in pursuit of a trade or business" when he performed services for AIPAC in DC. See sec. 162(a)(2). Petitioners contend that petitioner's "tax home" during the years in issue was in Las Vegas, where they maintained a residence and managed rental properties and where petitioner performed some of the services related to his video production business. Respondent argues that petitioner's tax home was in DC because his work for AIPAC over a period of 21 years was "permanent" rather than temporary and produced the bulk of petitioners' total income for the years in issue. If we agree with petitioners that petitioner's tax home was in Las Vegas, we must decide whether his travel, meals, and entertainment expenses have been substantiated under section 274(d) in amounts greater than allowed for 2011, 2012, and 2013 and in any amounts for 2014.

Petitioners bear the burden of proving entitlement to the deductions claimed. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), aff'g T.C.

[*8] Memo. 1972-133. They have not satisfied the requirements of section 7491(a) to shift the burden of proof.

Deciding whether transportation and travel expenses are deductible requires the determination of a taxpayer's tax home. See sec. 162(a). The word "home" for purposes of section 162(a)(2) generally refers to the area of a taxpayer's principal (if there is more than one regular) place of employment and not where his personal residence is located. Henderson v.Commissioner, 143 F.3d 497, 499 (9th Cir. 1998), aff'g T.C. Memo. 1995-559; Mitchell v. Commissioner, 74 T.C. 578, 581 (1980). When taxpayers have multiple jobs in different locations during the year, are married, and incur duplicate living expenses, identifying the location of the tax home requires review of multiple factors, including: (1) whether employment is permanent, temporary, or indefinite; (2) whether there is a business justification for incurring duplicate living expenses; (3) whether the spouses have separate tax homes; and (4) whether the taxpayers actually have multiple tax homes during one year because their principal places of business have changed. See Allen v. Commissioner, T.C. Memo. 2009-102, slip op. at 8.

In considering whether employment is permanent, temporary, or indefinite, the general rule is that if the location of the taxpayer's regular place of business changes, so does the taxpayer's tax home--from the old location to the new

**[*9]** location.  Kroll v. Commissioner, 49 T.C. 557, 562-563 (1968).  There is an exception to this rule if the employment is, or is reasonably expected to be, temporary.  Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958).  However, this exception does not apply if the employment away from home is indefinite.  Kroll v. Commissioner, 49 T.C. at 562.  Unless termination within a short period is foreseeable, employment that merely lacks permanence is considered indefinite.  See Neal v. Commissioner, 681 F.2d 1157, 1158 (9th Cir. 1982) (following Kasun v. United States, 671 F.2d 1059, 1061 (7th Cir. 1982)), aff'g per curiam T.C. Memo. 1981-407.  A taxpayer will not be treated as being temporarily away from home during any period of employment exceeding one year.  Sec. 162(a).  Although petitioner's work with AIPAC was long term, his travel to DC was sporadic and for short periods totaling less than half a year.

The second factor for identifying the tax home is that the taxpayers must have some business justification beyond merely personal reasons for maintaining an alleged tax home remote from a place of employment.  See Henderson v. Commissioner, 143 F.3d at 500; Tucker v. Commissioner, 55 T.C. 783, 787-788 (1971).  Petitioner performed some business services and had rental activities to justify maintaining a home in Las Vegas.

**[\*10]**  Third, when married couples maintain multiple places of abode, review is required to determine whether they have separate tax homes.  Spouses that both work and file a joint tax return may have separate tax homes.  See Hammond v. Commissioner, 20 T.C. 285, 287-288 (1953), aff'd, 213 F.2d 43 (5th Cir. 1954); Chwalow v. Commissioner, T.C. Memo. 1971-185, aff'd, 470 F.2d 475, 478 (3d Cir. 1972).  In this case we do not have to conclude that petitioners had separate tax homes because there are no travel deductions in issue relating to the employment of petitioner's spouse.

Last, when taxpayers have employment or business in multiple locations during one year, the principal place of business is generally used to determine the tax home.  See Stright v. Commissioner, T.C. Memo. 1993-576.  When a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the location of the taxpayer's new principal place of business.  See Coombs v. Commissioner, 608 F.2d 1269, 1276 (9th Cir. 1979), aff'g in part, rev'g in part 67 T.C. 426 (1976). Determining the principal place of business includes review of the location where the taxpayer spends more of his time, engages in greater business activity, and derives a greater proportion of his income.  Markey v. Commissioner, 490 F.2d 1249, 1255 (6th Cir. 1974), rev'g T.C. Memo. 1972-154.  The Court of Appeals

**[\*11]** for the Ninth Circuit has applied the <u>Markey</u> test to determine the tax home when a taxpayer both earns a substantial income and stays overnight in each of two locations. <u>See</u> <u>Folkman v. United States</u>, 615 F.2d 493 (9th Cir. 1980) (applying the <u>Markey</u> test and concluding that the taxpayer's tax home was the location where he spent more working time and derived most of his income); <u>see also</u> <u>Stright v. Commissioner</u>, T.C. Memo. 1993-576.

Respondent relies heavily on the assumption that AIPAC's payments to petitioner were solely for work performed during his trips to DC, while petitioner testified that much of his work was performed in his home office in petitioners' Las Vegas residence. Petitioner testified that 75% of his time was spent outside of DC, interviewing on location and writing scripts and reviewing footage in Las Vegas. The record does not explain how his services were billed to AIPAC; thus we cannot determine whether, for example, he billed only for the time spent in DC or billed also for time spent in Las Vegas or elsewhere. But his testimony is uncontradicted and not improbable or unreasonable. Respondent's assumption is not supported by any evidence. We cannot conclude that petitioner's income from AIPAC is attributable solely or primarily to work in DC.

[*12] In <u>Kroll v. Commissioner</u>, 49 T.C. at 562, the Court explained:

> The purpose of the "away from home" provision is to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses. <u>Leo M. Verner</u>, supra; <u>James v. United States</u>, 308 F.2d 204 (C.A. 9, 1962). The "tax home" doctrine is directed toward accomplishing this purpose. In effect, it asks the question whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business and thereby incur only one set of living expenses, which are of course nondeductible under section 262. * * *

On balance, because petitioner performed substantial services for AIPAC in Las Vegas, traveled to DC only to complete the production process, was required to be in DC only a few weeks at a time, and had other income-producing activities in the Las Vegas area, we accept petitioners' position that Las Vegas was petitioner's tax home. Answering that question, however, does not affect the result for 2011, 2012, or 2013, because petitioners have failed to substantiate any deductible expenses not previously allowed.

Because petitioners had not filed a return for 2014 at the time of the examination, the notice of deficiency sent to petitioner for that year did not allow any expenses relating to his video production business. Petitioners' late-filed return reported various expenses, but the summary offered at trial to support them included tickets to Las Vegas shows at various hotels, such as the Mirage, the

[*13] Bellagio, and the Luxor, and travel to Mexico, where petitioners had relatives. This gap in the evidence was pointed out by the Court during the trial, but petitioner did not even attempt to fill it. Petitioner's testimony did not include identification of the persons entertained or the business conducted or persons visited in Mexico, and the credit card receipts in the record include airline tickets to Mexico for petitioner's spouse and another unidentified person. We are not persuaded that petitioner's returns or summaries of expenses are reliable evidence of deductibility.

To be deductible as business expenses, amounts spent for travel (including meals and lodging while away from home) and entertainment are subject to the heightened substantiation requirements of section 274(d). Petitioners have woefully failed to meet that standard. As to other business expenses that might be subject to estimates, they have not provided the Court with sufficient evidence for a reasonable approximation to be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Although they produced copies of bank statements and credit card receipts, there is no testimony or other admissible evidence describing the time, place, or business purpose of expenditures. As to 2011, 2012, and 2013, there is no explanation in the record of which of the expense deductions claimed were allowed and which were disallowed according to the notice as not "verified".

**[*14]** The summaries offered suggest that petitioner was deducting a flat per diem rate in addition to actual expenses. The summary of deductions claimed for 2014 raises a strong suspicion that some of them are not allowable. Moreover, exhibits that petitioners offered included summaries of invoices for services and expenses, and it is not possible to determine from the records produced what expenses were reimbursed.

With respect to the costs of the condominium apartment, petitioner asserts that he rented the apartment "at the request of AIPAC because the cost was far lower", but it is unclear why AIPAC would have made that request if petitioner was not being reimbursed for his housing costs in DC. While his reported gross receipts may have included reimbursements, it is not possible on the record to track reimbursements to expenditures.

For 2011, 2012, and 2013 petitioners were allowed a percentage of their claimed business expense deductions and the applicable standard deduction. For 2014 respondent has conceded that petitioners are entitled to joint return rates and the applicable standard deduction. Petitioners have not proven or even addressed itemized deductions, dependency exemptions claimed, or computational adjustments. They have conceded an unreported income item for 2012. Petitioners' position is that their returns were correct as filed. Such a position,

[*15] even if presented in uncontradicted testimony, is not sufficient to satisfy petitioners' burden of proving their entitlement to deductions. See Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 197l), aff'g T.C. Memo. 1969-159.

Similarly, for 2014 petitioner's testimony was that the untimely return correctly reflected his business expenses. That testimony is also insufficient and is questionable for the reasons identified above. However, records were received without objection that reflect air travel and hotel bills incurred during 2014 for trips to DC, and there is no reason to believe that petitioner traveled to DC other than for AIPAC business. Thus he should be allowed to deduct the substantiated items listed in our findings, the compilation of which required a time-consuming review of the credit card receipts that should have been performed by petitioners or by respondent. In view of respondent's concessions as to joint return rates and our conclusion as to allowable travel expenses for 2014, a Rule 155 computation will be necessary for that year.

Additions to Tax and Penalties

Respondent has the burden of production with respect to penalties and additions to tax. Sec. 7491(c). Section 6651(a)(1) imposes an addition to tax for late filing of a return, and section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount shown as tax on a return. A return prepared by the

[*16] Commissioner under section 6020(b) is treated as a return for purposes of section 6651(a)(2). Sec. 6651(g)(2). The record includes evidence showing that petitioners' returns for 2012 and 2014 were filed very late and that petitioner did not pay the tax shown on the substitute for return prepared for him for 2014. Thus the additions to tax determined for 2012 and 2014 under section 6651(a) apply, absent a showing by petitioners of reasonable cause. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Petitioner referred vaguely to illness as an excuse for not filing the 2014 return before respondent issued the notice of deficiency for that year. Petitioners provided no details and did not offer any excuse for the late filing of the 2012 return, so no reasonable cause has been shown in this record. The additions to tax under section 6651(a) will be sustained.

Section 6662(a) imposes a 20% accuracy-related penalty on any underpayment of Federal income tax which is attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax. Negligence includes failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

**[\*17]**  Petitioners failed to maintain records substantiating their claimed deductions.  It appears that the understatement of income tax for each of 2011, 2012, and 2014 as a result of our holdings exceeds $5,000, which is greater than 10% of the tax required to be shown on petitioners' returns.  Thus, respondent's burden of production has been satisfied.

Once the Commissioner has met the burden of production, the taxpayers must come forward with persuasive evidence that the penalty is inappropriate because, for example, they acted with reasonable cause and in good faith.  Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449.  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners set forth no specific facts to show that the penalties should not apply.  Petitioners did not identify any tax professional on whom they relied with respect to the failure to report income in 2012 or the deductions disallowed because of failure to produce records satisfying the applicable substantiation requirements.  The incomplete records produced suggest careless recordkeeping, failure to comply with section 274(d) and applicable regulations, and questionable

[*18] deductions as business expenses of items appearing to be personal. The penalties under section 6662 will be sustained.

Section 6654(a) provides for an addition to tax in the event of an underpayment of estimated tax. On the record in this case, no exception applies. See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). The amount finally determined for 2014, however, will be determined after recomputation of the amount in accordance with our allowance of deductions in accordance with this opinion.

To reflect the foregoing,

Decisions will be entered under Rule 155 in docket No. 11322-16 and for respondent in docket No. 11307-16.